**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 19 2018

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| **ROBERT MURRAY, on behalf of himself and all others similarly situated**<br><br>*Plaintiff,*<br><br>vs.<br><br>**EARTHLINK HOLDINGS CORP., SUSAN D. BOWICK, JOSEPH F. EAZOR, KATHY S. LANE, GARRY K. MCGUIRE, R. GERARD SALEMME, JULIE A. SHIMER, MARC F. STOLL, WALTER L. TUREK, WINDSTREAM HOLDINGS, INC., CAROL B. ARMITAGE, SAMUEL E. BEALL III, JEANNIE H. DIEFENDERFER, JEFFREY T. HINSON, WILLIAM G. LAPERCH, LARRY LAQUE, KRISTI MOODY, MICHAEL G. STOLTZ, TONY THOMAS, ALAN L. WELLS** | Case No. 4:18-cv-202-BRW<br><br>**JURY TRIAL DEMANDED**<br><br><br><br>This case assigned to District Judge _Wilson_<br>and to Magistrate Judge _Harris_ |

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

Plaintiff Robert Murray ("Plaintiff"), individually and on behalf of all others similarly situated, by the undersigned counsel, respectfully brings this class action for violations of §§11 and 15 of the Securities Exchange Act of 1933 (the "1933 Act"), §§14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder, against the herein named defendants.  Plaintiff brings this federal class action against defendants upon personal knowledge as to those allegations concerning themselves and, as to all other matters, upon the investigation of counsel, which included, without limitation, the review and analysis of: (a) public filings with the SEC; (b) releases and other publications; and (c) securities analyst reports, news articles, websites, and other publicly available

information. Plaintiff believes that substantial additional evidentiary support will likely exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

1.     This is a merger-related securities class action brought on behalf of the former holders of EarthLink Holdings Corp. ("EarthLink") common stock against Earthlink, its former Board of Directors (the "Earthlink Board"), Windstream Holdings, Inc. ("Windstream"), its Board of Directors (the "Windstream Board") and certain of Windstream's officers, for violations of the federal securities laws in connection with misleading statements in proxy statements issued in connection with the merger of EarthLink and Windstream (the "Merger").

2.     Before the Merger, EarthLink was a network services company that was successfully effectuating a turnaround with its management promising strong growth in the future. In 2014 and 2015, EarthLink had expended significant efforts in stabilizing the business and improving cash generation via operational efficiencies. These efforts allowed EarthLink to strengthen its foundation allowing EarthLink to focus next on growth. In 2016, EarthLink began focusing on growth initiatives. However, before Earthlink could deliver on the growth initiatives, and before stockholders could finally reap the benefits from investing in EarthLink through its turnaround period, EarthLink's management embarked on a plan to combine the Company with Windstream.

3.     On September 1, 2016, the CEOs of the two companies connected.

4.     On October 5, 2016, Windstream proposed a merger between the two companies in which each share of EarthLink common stock would be exchanged for 0.7 shares of Windstream common stock.

5.     Despite the fact that EarthLink's stock was increasing at this time, so that the "implied transaction premium based on the proposed exchange ratio had decreased to low single

digits," EarthLink's management continued to work with Windstream management to finalize a merger on similar terms.

6.      On November 4, 2016 – just one month after Windstream's opening proposal –both CEOs agreed on an exchange ratio of 0.818.

7.      Based on the closing price of Windstream common stock on the NASDAQ on November 3, 2016, the exchange ratio of 0.818 represented approximately $5.55 in value for each share of EarthLink common stock. This Merger consideration was insufficient and undervalued EarthLink.   The Merger consideration was inconsistent with EarthLink's recent financial performance, statements by EarthLink's management and analyst targets.

8.      Yet, one day later, on November 5, 2016, EarthLink's financial advisors provided valuations of EarthLink and opined that the Merger consideration was fair to the company's stockholders. Relying on these fairness opinions, the EarthLink Board approved the Merger.

9.      On January 24, 2017, EarthLink and Windstream jointly filed and disseminated a definitive proxy statement on a Schedule 14A (the "Proxy") with the SEC, which was supplemented on February 14, 2017 (the "Proxy Supplement"). As further discussed herein, the Proxy and Proxy Supplement contained contains materially incomplete and misleading information concerning the flawed valuations performed by EarthLink's financial advisors. These materially incomplete and misleading statements in the Proxy and Proxy Supplement prevented stockholders from making a fully informed decision on the Merger, and induced stockholders to defer to the valuations and approve the Merger, as recommended by defendants.

10.     As a result, EarthLink stockholders agreed to accept the unfair Merger consideration – which did not adequately compensate them for their EarthLink stock – and acquired shares of Windstream common stock traceable to the Proxy and Proxy Supplement.

3

11.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against defendants for violations of §14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder, §20(a) of the 1934 Act, and §§11 and 15 of the 1933 Act.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, §22 of the 1933 Act and §27 of the 1934 Act.

13.     This Court has jurisdiction over each defendant.   Windstream operates and maintains its headquarters within this District.   At least two of the Windstream Individual Defendants reside in this District.   Moreover, each of the Windstream Individual Defendants (defined below) are officers and directors of Windstream, and thus have systemic and continuous activity in this District, enjoy benefits of the laws of Arkansas, and the exercise of jurisdiction is reasonable and foreseeable.   EarthLink and the EarthLink Individual Defendants (defined below) are a corporation or individuals who have sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.   EarthLink and the EarthLink Individual Defendants purposely decided to negotiate and enter into a merger with Windstream, a corporation in this District, knowing that the combined company would be located in this District, and that the result of the Merger would be that the EarthLink Individual Defendants would obtain material benefits in the Merger, and previous Earthlink stockholders (including the EarthLink Individual Defendants themselves) would acquire stock in Windstream.   Thus, EarthLink and the EarthLink Individual Defendants purposely directed their actions towards Arkansas, and benefited from same, such that the exercise of jurisdiction is reasonable and foreseeable.

14.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Windstream's headquarters are located in this District, and a substantial part of the events or

omissions giving rise to the claim occurred in this District, including the issuance of the Proxy and Proxy Supplement and the issuance of Windstream common stock to Plaintiff and the Class.

### PARTIES

15.     Plaintiff was, at all relevant times, the owner of Earthlink common stock, and received Windstream stock in exchange for their Earthlink stock as a result of the Merger.

16.     Before the Merger, defendant Earthlink was a Delaware corporation that maintained its headquarters at 1170 Peachtree Street, Atlanta, Georgia 30309.  Its stock traded on NASDAQ under the symbol "ELNK."

17.     Defendant Susan D. Bowick ("Bowick") was a member of the Earthlink Board from May 2008 to the closing of the Merger.

18.     Defendant Joseph F. Eazor ("Eazor") was Earthlink's CEO and President, and a member of the Earthlink Board, from January 2014 to the closing of the Merger.

19.     Defendant Kathy S. Lane ("Lane") was a member of the Earthlink Board from July 2013 to the closing of the Merger.

20.     Defendant Garry K. McGuire ("McGuire") was a member of the Earthlink Board from July 2011 to the closing of the Merger.

21.     Defendant R. Gerard Salemme ("Salemme") was a member of the Earthlink Board from October 2013 to the closing of the Merger.

22.     Defendant Julie A. Shimer Ph.D. ("Shimer") was the Chairman of the Earthlink Board from February 2014 to the closing of the Merger, and a member of the Earthlink Board from July 2013 to the closing of the Merger.  She was appointed to the Windstream Board in connection with the Merger and currently is a member of the Windstream Board.

23.     Defendant Marc F. Stoll ("Stoll") was a member of the Earthlink Board from April 2016 to the closing of the Merger. He was appointed to the Windstream Board in connection with the Merger and currently is a member of the Windstream Board.

24.     Defendant Walter L. Turek ("Turek") was a member of the Earthlink Board from October 2015 to the closing of the Merger. He was appointed to the Windstream Board in connection with the Merger and currently is a member of the Windstream Board.

25.     Defendants Earthlink, Bowick, Eazor, Lane, McGuire, Salemme, and Turek are collectively referred to as the "Earthlink Defendants."

26.     Defendants Bowick, Eazor, Lane, McGuire, Salemme, Shimer, Stoll, and Turek are collectively referred to as the "Earthlink Individual Defendants."

27.     Defendant Windstream is a Delaware corporation that maintains its headquarters at Little Rock, Arkansas. Its stock trades on NASDAQ under the symbol "WIN."

28.     Defendant Carol B. Armitage ("Armitage") is and was a member of the Windstream Board at the time of the Proxy.

29.     Defendant Samuel E. Beall III ("Beall") is and was a member of the Windstream Board at the time of the Proxy.

30.     Defendant Jeannie H. Diefenderfer ("Diefenderfer") is and was a member of the Windstream Board at the time of the Proxy.

31.     Defendant Jeffrey T. Hinson ("Hinson") is and was a member of the Windstream Board at the time of the Proxy.

32.     Defendant William G. LaPerch ("LaPerch") is and was a member of the Windstream Board at the time of the Proxy.

33.     Defendant Larry Laque ("Laque") is and was a member of the Windstream Board at the time of the Proxy.

34.     Defendant Kristi Moody ("Moody") is the Senior Vice President and Corporate Secretary of Windstream who signed the Proxy.  Plaintiff is informed and believes that Moody is an individual who resides in this District.

35.     Defendant Michael G. Stoltz ("Stoltz") is and was a member of the Windstream Board at the time of the Proxy.

36.     Defendant Tony Thomas ("Thomas") is Windstream's CEO and President, and a member of the Windstream Board.  Thomas signed the Proxy and was a member of the Board at the time of the Proxy.  Plaintiff is informed and believes that Thomas is an individual who resides in this District.

37.     Defendant Alan L. Wells ("Wells") is the Chairman of the Windstream Board and was a member of the Windstream Board at the time of the Proxy.

38.     Defendants Windstream, Armitage, Beall, Diefenderfer, Hinson, LaPerch, Laque, Moody, Stoltz, Thomas, and Wells, are collectively referred to as the "Windstream Defendants."

39.     Defendants Armitage, Beall, Diefenderfer, Hinson, LaPerch, Laque, Moody, Stoltz, Thomas, and Wells, are collectively referred to as the "Windstream Individual Defendants."

## CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action individually and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of former holders of Earthlink common stock who were harmed thereby by defendants' conduct described herein (the "Class").  Excluded from the Class are defendants and any person, firm, trust, corporation or other entity related to or affiliated with any defendant.

41.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

42.     The Class is so numerous that joinder of all members is impracticable. The precise number of Class members is unknown to Plaintiff at this time, but the names and addresses of the Class members can be ascertained from the books and records of Earthlink and through appropriate discovery. As of the record date, January 23, 2017, there were more than 105.5 million outstanding shares of Earthlink common stock held by hundreds or thousands of individuals and entities scattered throughout the United States.

43.     There are questions of law and fact that are common to the Class and that predominate over questions affecting any individual Class member. The common questions include, *inter alia*:

      (a)     whether the Proxy contained materially misleading omissions;

      (b)     whether the Earthlink Defendants and the Windstream Defendants violated the federal securities laws as alleged in this Complaint, including violating §§14(a) and/or 20(a) of the 1934 Act;

      (c)     whether the Windstream Defendants violated the federal securities laws as alleged in this Complaint, including violating §§11 and/or 15 of the 1933 Act; and

      (d)     whether Plaintiff and the other members of the Class sustained damages and the proper measure of damages.

44.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interest adverse to the Class.

45.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

46.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class.

47.     Plaintiff anticipates that there will be no difficulty in the management of this litigation.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

48.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### EarthLink Executes its Turnaround and Invests in Growth Initiatives

49.     EarthLink began operations in 1994 as a provider of nationwide internet services to residential customers.  In 1996, EarthLink expanded into the small to mid-sized business market.  In 2006, EarthLink expanded into the enterprise business market.  During 2010 through 2013, EarthLink acquired eight companies which transformed its business from being primarily an internet services provider to residential customers into a network, communications and IT services provider for business customers.

50.     In 2014 and 2015, Earthlink refocused its business strategy, with the intent "to be a leading managed network, security and cloud services provider for multi-location retail and service businesses."  EarthLink stated:

We believe there is a significant market opportunity for managed network, security and cloud services due to the changing technological and business landscape, which is experiencing increased demand for data, evolving security threats, a shift towards more software based solutions, increased use of outsourcing and tightening budgets. We are positioning our company to focus on this opportunity.

51.    In 2015, EarthLink implemented certain organizational and operational changes. Historically, EarthLink operated two reportable segments, business services (for business customers) and consumer services (for residential customers). In 2015, EarthLink split its business services segment into three separate reportable segments. With this split, EarthLink began to operate in four segments:

- *Enterprise/Mid-Market* – which provided a broad range of data, voice and managed network services to distributed multi-site business customers, representing about 41% of total revenues in 2015;

- *Small Business* – which provided a broad range of data, voice and managed network services to small, often single-site business customers, representing about 27% of total revenues in 2015;

- *Carrier/Transport* – which provided transmission capacity and other data, voice and managed network services to telecommunications carriers and large enterprises, representing about 12% of total revenues in 2015; and

- *Consumer Services* – which provided nationwide Internet access and related value-added services to residential customers, representing about 20% of total revenues in 2015.

52.    As of 2015, EarthLink's business strategy focused on three goals: (1) driving improved cash flow; (2) focusing on growing its *Enterprise/Mid-Market* and *Carrier/Transport* segments; and (3) working to de-lever the balance sheet.

53.    Throughout 2015, EarthLink management continued to successfully execute the company's business strategy. During this period, EarthLink consistently announced strong financial results.

54.    On November 2, 2015, EarthLink announced its third quarter 2015 results, including "[s]trong [c]ash [g]eneration" in the quarter which "[e]nable[d] $45 [m]illion [d]ebt

10

[r]eduction." EarthLink announced that it produced $39 million in Unlevered Free Cash flow in the quarter, in increase compared to Unlevered Free Cash Flow of $34.1 million in the third quarter of 2014. EarthLink also announced that it was raising guidance for the second time for 2015 revenue, adjusted EBITDA and Net Income.[1]

55.     In the press release announcing the results, Eazor stated: "'EarthLink continues to strengthen as we develop our business unit operating model . . . .'" He stated: "'The resulting focus in our business units is creating efficiency which helps us sustain robust cash flow. For the third consecutive quarter, we used that cash flow to improve our balance sheet.'"

56.     In the earnings call, Eazor stated:

> I would like to take the next few minutes to share where we stand now and what lies ahead. We believe there are several stages to our transformation. The first stage was to stabilize and simplify our business. We accomplished much of this last year and early this year as we streamlined operations, improved our cost structure, rationalized product portfolios and significantly improved our cash flow.
>
> With the company on better footing, we then moved to stage 2 and more aggressively improved our operating performance. At the beginning of this year, we implemented our business unit organization and operating model and have seen the benefits materialize throughout the year.

*     *     *

> Even though a significant portion of our business is declining today, I'm convinced that we have everything we need including the services, customers, financial resources and outstanding dedicated team members to become the leading company we want to be. We are setting our sights high and in the meantime we are demonstrating operational and financial discipline, so that we can create value all along the way.

*     *     *

> For the third straight quarter, we used our strong cash flow to reduce gross and net leverage. This quarter, we reduced net debt by $45 million. Based on these

---

[1]     EarthLink issued its original guidance in February 2015, and raised its guidance in August 2015.

11

results, we're again raising full year guidance on the top and bottom-line and Louis will provide more details in just a minute.

Results like these tell me we're effectively executing our strategy. To summarize, we've outlined a clear, focused strategy and are executing our strategy in each of our four business units.

57. In the presentation provided with its earnings highlights for the third quarter 2015, EarthLink provided the following snapshot of its four business segments:



58. EarthLink also provided the following financial snapshot for the third quarter 2015:



59.     On February 17, 2016, EarthLink announced its fourth quarter and full year 2015 results, including: (i) Unlevered Free Cash Flow of $26.8 million for the fourth quarter, up from $24.6 million in the fourth quarter of 2014; and (ii) Unlevered Free Cash Flow of $155.0 million for the full year 2015, up from $110.2 million for the full year 2014.

60.     In the press release announcing the results, Eazor stated: "'2015 was a year of significant progress for EarthLink . . . .'" He stated: "'We executed on our business unit strategy and delivered strong financial performance as a result. Going into 2016 we are focusing on activities that pave the way to growth.'"

61.     In the earnings call, Eazor stated:

As we move into 2016 and beyond, we are pivoting more and more of our attention to growth related activities, while continuing to drive strong financial and operating performance. In line with this roadmap, 2015 was a year of significant progress. Some of the highlights for 2015 were we achieved operational and financial improvements across the company including improved churn management allowing us to retain incremental revenue from price increases across our retail businesses, as well as achieving record low churn in our consumer business, over the last two quarters of the year.

*     *     *

As a result of these efforts, we generated more cash flow than any year since 2011 up 41% over 2014 and achieved a four-percentage point improvement in adjusted EBITDA margin over 2014 from 18% to 22% all on declining revenue.

At the corporate level, we're able to use this enhanced cash flow to reduce our net debt by $48 million and reduced our annual interest expense by $10 million. We managed to achieve all of this, while investing in our core products and planting seeds for new product rollouts in 2016, which I will discuss in more detail in a few minutes.

*     *     *

So in summary, 2015 was a year of significant progress, a lot of progress on our journey. And we're heading into 2016 as a much stronger company. As I mentioned earlier, 2016 will continue to focus on improving our performance across the business, while shifting more and more focus to driving growth.

*     *     *

In 2016, we will continue to drive operational excellence. We will invest in growth to gain market momentum and consider strategic alternatives that would accelerate our path to success. I'm more optimistic than ever about the opportunity in front of us and our ability to seize that opportunity.

62.     In the presentation provided with its earnings highlights for the fourth quarter 2015,

EarthLink provided the following snapshot of the overview of its business strategy:



63.     EarthLink provided the following snapshot of its business unit operations:

64.     EarthLink also provided the following agenda with respect to 2016:

## 2016 Agenda

**Operational Excellence**
- Improve customer experience
- Optimize quote-to-cash processes and systems
- Drive opex, capex and network productivity
- Execute Business Unit plans to achieve benchmark performance
- Focus on demand generation

**Investment in Growth**
- Launch SD-WAN
- Continue to de-emphasize low-margin/non-core products
- Enhance Professional Services capabilities
- Develop and deploy industry vertical solutions
- Add sales resources



**Strategic Alternatives**
Continue disciplined approach to strategic alternatives that would accelerate path to leadership

65.     On May 2, 2016, EarthLink announced its first quarter 2016 results.  In the press release announcing the results, Eazor stated: "'2016 is a transformational year for EarthLink as we work to become the industry leader in network services in the cloud world . . . .'"  He stated: "'In the first quarter, we made progress on our journey and delivered solid financial results, including strong cash flow and further debt reduction.'"

66.     In the earnings call, Eazor stated:

The last two years have been about becoming a focused, consistently higher performing company with a healthier balance sheet giving us a strong base from which we can grow.

To this end, I'm happy to report that Q1 was another solid step in this direction. We had good performance on revenue, EBITDA and cash flow, which allowed us to further de-lever and strengthen our balance sheet. Additionally, we continue to make progress in our effort to become a growing company, with the ultimate goal of market leadership.

We continue to enhance our business portfolio by divesting our subscale IT services business. We also pushed forward with our go-to market transformation activities across all business units along with [ph] critically (03:25) targeted product investments. And we continue to improve our balance sheet, reducing our gross debt by $42 million and net debt by $12 million.

\*       \*       \*

To conclude, I'm pleased with our first quarter results and progress, and we have a well-defined path towards market success and ultimately leadership. The next 12 months to 18 months will be critical for us to gain real market momentum as well as continue to drive efficiency and productivity.

67.     In the presentation provided with its earnings highlights for the first quarter 2016,

EarthLink provided the following snapshot of the accomplishments in the quarter:



68.     EarthLink provided the following snapshot of the results of its business unit

operations for the quarter:



69.     On May 11, 2016, EarthLink's CFO Louis Alterman attended Jefferies

Technology, Media and Telecom Conference and made a presentation on behalf of EarthLink.

After the presentation, Jefferies issued an analyst report with "takeaways" from the conference, including that:

- **"Operational Turnaround Ahead of Schedule.** While revenues are still declining, some of this is intentional as the company de-emphasizes low margin businesses. Nevertheless, healthy margin expansion, lower capital expenditures, and an improved balance sheet are all signs that the turnaround is succeeding."

- "Our year-end 2016 price target of $6.50 is based on a 5-year discounted cash flow (DCF) that assumes a 8.0% WACC and terminal declines of 2%."

70.    On May 11, 2016, Eazor attended Goldman Sachs Leveraged Finance Conference and made a presentation on behalf of EarthLink.  During the presentation he stated:

> Sure. So, we've transformed the company and refocused the company a bit in the last couple years. We started and what I would consider, bit of a turnaround situation. The first 18 months of my tenure were about the sharpening our performance and improving our cash flow as well as de-levering the balance sheet. And then the last six months or so have been shifted more to how to be successful in the market, and with the focus more on growth. So we've invested in our products.
>
> We continue to operate effectively and perform what I consider, strongly on an operational and financial basis. But long-term, we're putting effort into our products to try to drive growth in the market. Our goal is to be the leader in delivering network services in the cloud world.

71.    On May 25, 2016, EarthLink's CFO Louis Alterman attended B. Riley & Co. Investor Conference and made a presentation on behalf of EarthLink.  During the presentation he stated:

> And then the next step is to grow. We've got really, really interesting assets inside of our Carrier and Transport business, and really, really interesting capabilities inside of our Enterprise and Mid-Market business that have a lot of growth to them. And we think, over time, the growth there overtakes the decline from the businesses that we're running for cash flow. And our goal is not just to stop there. We want to be the leaders in the industry. And we talk about that not just externally, but internally and we tell ourselves all the time that we're going to – we'll keep going until that's our position.

72.    On August 8, 2016, EarthLink announced its second quarter 2016 results.  In the press release announcing the results, Eazor stated: "'Our overall business performance continued

to improve, we strengthened our balance sheet further with a new credit facility, and we were recognized by Forbes as one of America's top 100 most trustworthy companies. Finally, in early July, we acquired Boston Retail Partners to expand our capabilities as a trusted advisor to retailers.'"

73.    In the earnings call, Eazor stated:

As a brief recap, we've established a clear strategy for the company and specific marching orders for each business unit. We have rationalized our products and divested or shut down non-core and underperforming assets. We have significantly improved profit margins and cash flow. We have generated positive net income for the second quarter in a row. We have materially strengthened our balance sheet and reduced interest expense. And we have shifted more attention to growth by investing and differentiating our products and services and undertaking a go-to-market transformation.

We are committed to continually improving our performance, but our overarching goal is that of industry leadership. I've laid out a transformation plan and path to leadership before, as shown on page five, and believe we continue to take good steps on this journey.

\*        \*        \*

I would like to make a few more comments in closing. We transformed EarthLink into a strong, consistently performing company strategically, operationally and financially. This has been accompanied by the significant strengthening of our balance sheet and reduction in leverage. We have a world-class team in place and are shifting more and more attention and effort beyond basic operating improvements to delivering that growth.

74.    In the presentation provided with its earnings highlights for the second quarter

2016, EarthLink provided the following snapshot of the accomplishments in the quarter:



75.    EarthLink provided the following snapshot of the results of its business unit

operations for the quarter:




76.    On August 5, 2016, EarthLink shares closed at $6.98.

77.    On August 10, 2016, analyst Northland Capital Markets issued an update with a

price target for EarthLink of $8.00.

**The EarthLink Individual Defendants Agree to an Unfairly Priced Merger**

78.     As demonstrated above, in the fall of 2016, EarthLink was a company that: (i) had recently expended significant efforts in stabilizing, and improving the operational efficiencies of its business; (ii) had recently and heavily invested in its growth initiatives; and (iii) was just starting to see the benefits with respect to these efforts.

79.     EarthLink's anticipated value return to stockholders with respect to its growth initiatives, however, was cut short, as EarthLink's management began merger negotiations with Windstream.

80.     On September 1, 2016, Eazor and Thomas (Windstream's President and CEO) discussed a potential business combination of EarthLink and Windstream.

81.     On October 3, 2016, EarthLink and Windstream entered into a confidentiality agreement to permit the exchange of non-public information.

82.     On October 4, 2016, the management teams of EarthLink and Windstream met in Atlanta.

83.     On October 5, 2016, Thomas sent Eazor an indication of interest, proposing a merger between the two companies in which each share of EarthLink common stock would be exchanged for 0.7 shares of Windstream common stock.

84.     At a October 7, 2016 board meeting, the members of the EarthLink Board were informed of Windstream's proposal.  During this meeting, the EarthLink Board determined to retain Foros Securities LLC ("Foros") as its financial advisor.  Foros had served as EarthLink's financial advisor in EarthLink's previous explorations of business combinations from 2014 to 2016, none of which resulted in a business combination.  Therefore, it was unlikely that Foros received its desired fees in connection with those efforts.  The Proxy states that Foros received just $1.25 million in the two years preceding the Merger.   The Merger represented an opportunity for

Foros to regain some of its lost fees. With the Merger, Foros stood to gain approximately $13.5 million, of which approximately $2 million was payable for a fairness opinion, and the rest contingent on the consummation of the Merger.

85. During the October 7th meeting, the EarthLink Board also discussed hiring a second financial advisor, Goldman, Sachs & Co. ("Goldman Sachs").

86. Over the next week, Eazor and his management team and Windstream discussed exchange ratios and the number of EarthLink directors that would be appointed to the post-merger, combined board.

87. Around October 12, 2016, EarthLink and Windstream made their respective electronic data rooms available and commenced due diligence of non-public materials.

88. On October 17, 2016, analyst Cowen and Company noted in a report titled "Transformation Further Along Than Valuation Reflects" that EarthLink was currently undervalued in the market. "Valuation is cheap," stated the report. "ELNK trades at 5.0x 2017E EBITDA vs. our competitive telco comp at 8.6." The report concluded: "Taking the average of our DCF and SOP valuations, it implies a price target of $8.00."

89. On October 28, 2016, EarthLink's stock closed at $5.85.

90. On October 29, 2016, Eazor and Thomas had several conversations, in which Thomas indicated that Windstream would agree to an all-stock transaction at an exchange ratio of 0.8.

91. The Proxy states that on November 3, 2016, Eazor contacted Thomas to indicate "his concern that the implied transaction premium based on the proposed exchange ratio had decreased to low single digits based on each company's respective stock price."

21

92.     On November 4, 2016, a *Reuters* news article leaked that the EarthLink and Windstream were in discussions.

93.     On November 4, 2016, EarthLink's stock closed at $6.22.

94.     On November 4, 2016, Eazor contacted Thomas to express concern again about the exchange ratio. Later that day, they both agreed on an exchange ratio of 0.818.

95.     Based on the closing price of Windstream common stock on the NASDAQ on November 3, 2016, the Merger consideration represented approximately $5.55 in value for each share of EarthLink common stock.

96.     Eazor agreed to present the exchange ratio of 0.818 to the EarthLink Board for approval.

97.     On November 5, 2016, the EarthLink Board held a meeting. At this meeting, Foros and Goldman Sachs provided their respective financial analyses to the Board, and their matching fairness opinions that the exchange ratio was fair, from a financial point of view, to the holders of EarthLink common stock.

98.     At the conclusion of the meeting – ***only one month after Windstream's first indication of interest*** – the EarthLink Board unanimously determined that the Merger was "fair to and in the best interests" of EarthLink stockholders and approved the Merger Agreement and Merger.

99.     On November 7, 2016, EarthLink and Windstream announced the Merger.

100.    On November 7, 2016, EarthLink announced its third quarter 2016 results, including its third consecutive quarter of positive income. In the press release announcing the results, Eazor stated: "'EarthLink delivered another quarter of solid operational and financial results in the third quarter . . . .'" He stated: "'We launched our SD-WAN product and have signed

new deals with customers who are excited about EarthLink's Concierge Service supporting this important new technology. The combination of EarthLink's robust SD-WAN capability coupled with this proactive support model has been very impactful in the early days of our introduction.'"

101. On November 8, 2016, analyst Northland Capital Markets indicated that its price target for EarthLink was $8.00 "equat[ing] to an EV/EBITDA of 6x, supported by our DCF model."

**Defendants Jointly File the False and Misleading Proxy and Proxy Supplement**

102. On January 24, 2017, defendants jointly filed and disseminated the Proxy. On February 14, 2017, defendants jointly filed and disseminated the Proxy Supplement.

103. In the Proxy and Proxy Supplement, defendants represented that the Merger consideration was fair to EarthLink's shareholders. In support, defendants pointed to the valuations performed by Foros and Goldman Sachs.

104. However, Foros and Goldman Sachs undervalued EarthLink. Foros and Goldman Sachs did not base their valuations on unlevered cash flows reflected in management's financial projections. In management's financial projections, unlevered free cash flows were estimates before excluding stock-based compensation expense. Foros and Goldman Sachs, however, based their valuations off of unlevered cash flows which excluded stock-based compensation. Had the unlevered cash flows been increased by the amount of its stock-based compensation expense (as consistent with management's financial projections), Foros' and Goldman Sach's valuations for EarthLink (as well as the implied value ranges for the combined company) would have increased.

105. With this flawed assumption, Foros' and Goldman Sachs' valuations significantly undervalued the intrinsic value of EarthLink. That Foros' and Goldman Sachs' valuations significantly undervalued the intrinsic value of EarthLink is supported by the fact that their

23

valuations are contradicted by EarthLink's actual financial performance and numerous statements by EarthLink's management, as discussed in ¶¶49-77, 100-101 above.

106. Moreover, that Foros' and Goldman Sachs' valuations significantly undervalued the intrinsic value of EarthLink is further supported by the fact that, at the time of the Merger, the outlook for EarthLink's sector – the internet and software services industry – appeared strong. As reported in the *Wall Street Journal*, revenue from ISPs (internet service providers) was expected to grow at a rate of 6.3% from 2016 – 2021. Additionally, as reported by Morgan Stanley, IT spending by corporations is expected to grow by 4.2% in the upcoming years. Additionally, external factors, such as the repeal of net neutrality, were expected to have a positive impact for companies like EarthLink.

107. Moreover, that Foros' and Goldman Sachs' valuations significantly undervalued the intrinsic value of EarthLink is further supported by the fact that: (i) EarthLink traded significantly above the $5.55 per share price represented by the Merger consideration, including closing at $6.98 as recently as August 2016 and closing at $6.22 on November 4, 2016; and (ii) analysts' price targets were significantly above the $5.55 per share price represented by the Merger consideration (*see* ¶¶69, 76-77, 88-89, 93, 101).

108. Moreover, that Foros' and Goldman Sachs' valuations significantly undervalued became clear when Windstream stock fell 45.4% in August 2017. Since August 2, 2017, the stock of the combined company consistently traded below $2.00 per share. As of February 9, 2018, Windstream closed at $1.39 per share.

109. However, shareholders were not fully informed of the fact Foros' and Goldman Sachs' valuations significantly undervalued the intrinsic value of EarthLink, because defendants did not disclose the necessary information.

24

110.    Defendants omitted the actual unlevered free cash flows used by Foros and Goldman Sachs in their DCF valuations.

111.    Defendants also omitted critical items with respect to financial projections:

(a)    Revenue and cost synergies estimates for the pro forma combined entity;

(b)    Tax Rate, as used by the advisors in their respective analyses; and

(c)    Net operating loss ("NOL") utilization for EarthLink, Windstream and the pro forma combined company, for all periods after 2019, as utilized by the advisors.

112.    Defendants also omitted critical inputs in Foros' financial analyses, including:

(a)    *Present Value of Future Share Price Analysis*

(i)    the forecast share counts, debt, cash, dividends and share prices for each of the years of this analysis, for EarthLink and Windstream; and

(ii)    the individual value ranges, for NTM Adjusted EBITDA and NTM UFCF multiples for each of the years of this analysis, for EarthLink and Windstream;

(b)    *Discounted Cash Flow Analysis*

(i)    the assumed tax rate used to determine the present value of the NOLs for EarthLink and Windstream;

(ii)    the implied terminal EBITDA multiple ranges resulting from this analysis, for EarthLink and Windstream; and

(iii)    the terminal year unlevered free cash flow amount to which Foros applied its selected perpetuity growth rates, in each analysis;

(c)    *Comparison of EarthLink Estimated Standalone Value to Share of Pro Forma Value*

(i)       the assumed tax rate used to determine the present value of the net operating loss carryforwards for the Pro Forma entity; and

(ii)      the separate forecasted share counts, debt, cash, dividends and share prices for the combined company, for all years of this analysis.

113.    Defendants also omitted critical inputs in Goldman Sachs' financial analyses, including:

(a)    *Illustrative Present Value of Future Stock Price Analysis*

(i)      the forecast fully diluted shares and net debt for EarthLink, Windstream, and the combined company through December 31, 2017 and December 31, 2018;

(ii)      the forecast annual dividend amounts for all periods of this analysis, for EarthLink, Windstream, and the combined company; and

(iii)    the aggregate amounts of estimated per share dividends to be paid by each of EarthLink, Windstream, and the pro forma combined company through December 31, 2017 or 2018;

(b)    *Illustrative Discounted Cash Flow Analysis*

(i)      the estimated net present values of EarthLink's, Windstream's and the pro forma combined company's net operating losses, as provided by EarthLink's management; and

(ii)      the terminal year unlevered free cash amount utilized by Goldman Sachs in each analysis.

114.    The above omitted information was material because, as discussed above, the information was necessary to fully inform EarthLink shareholders of the flaws in Foros' and Goldman Sach's valuations. This information was material particularly here, where stockholders

were being encouraged to defer to Foros' and Goldman Sachs' fairness opinion based on their valuations, and where stockholders were told that the EarthLink Board was recommending that they vote in favor of the Merger, based on those flawed fairness opinions.

115. A reasonable shareholder would consider this information important in deciding whether to vote in favor of the Merger because this information went to the heart of the choice before EarthLink stockholders – whether or not to vote in favor of the Merger and accept the Merger consideration and exchange their EarthLink common stock into 0.818 shares of Windstream common stock.

116. The omission of the information identified in ¶¶110-111 above rendered the following statements in the Proxy and Proxy Supplement misleading:

(a) the statement on page 78 suggesting that Foros' valuation used management's financial projections: "Foros performed a discounted cash flow analysis (which we refer to in this section of this joint proxy statement/prospectus as a DCF analysis or DCF) utilizing the EarthLink Projections and the Windstream Projections";

(b) the statement on page 78 of the Proxy that Foros' DCF resulted in an "implied per share present value range for EarthLink common stock of approximately $5.18 to $8.30";

(c) the statements on page 77 of the Proxy that Foros' *Present Value of Future Share Analysis* "indicated a range of implied per share prices for EarthLink common stock as of October 31, 2016 of approximately $4.86 to $6.75" and "indicated a range of implied per share prices for Windstream common stock as of October 31, 2016 of approximately $4.02 to $18.93";

(d) the statements on page 79-80 of the Proxy that Foros' *Comparison of EarthLink Estimated Standalone Value to Share of Pro Forma Value* analysis resulted in the

implied equity value of EarthLink common stock on a stand-alone basis of "5.18 - $8.30," the implied EarthLink per share value of combined company's common stock of "$2.98 - $15.60," the implied equity value of EarthLink common stock and cash dividends on a stand-alone basis of "$5.46 - $7.13" and the implied EarthLink per share value of combined company's common stock and cash dividends of "$7.95 - $12.13";

(e)     the statements on pages 70-73 of the Proxy representing that Foros opined that "the exchange ratio was fair, from a financial point of view, to the holders of EarthLink common stock";

(f)     the statement on page 87 suggesting that Goldman Sachs' valuation used management's financial projections: "Goldman Sachs performed an illustrative discounted cash flow analysis of EarthLink, Windstream and the pro forma combined company, in each case using the Forecasts (which, in the case of the pro forma combined company, included the Synergies)";

(g)     the statement on page 87 of the Proxy that Goldman Sach's DCF resulted in an "indicated a range of illustrative present values per share of EarthLink common stock ranging from $4.17 to $7.81";

(h)     the statement on pages 85-86 of the Proxy that Goldman Sach's ***Illustrative Present Value of Future Stock Price Analysis***: "yielded an illustrative range of implied present values per share of (i) $4.93 to $6.60 using the estimated 2017 one-year forward EV/Adjusted EBITDA multiples and estimated 2018 Adjusted EBITDA and (ii) $5.15 to $6.68 using the estimated 2018 one-year forward EV/Adjusted EBITDA multiples and estimated 2019 Adjusted EBITDA" for EarthLink; "yielded an illustrative range of implied present values per share of (i) $0.97 to $12.08 using the estimated 2017 one-year forward EV/Adjusted EBITDA multiples and estimated 2018 Adjusted EBITDA and (ii) $1.92 to $11.37 using the estimated 2018 one-year

28

forward EV/Adjusted EBITDA multiples and estimated 2019 Adjusted EBITDA" for Windstream; and "yielded an illustrative range of implied present values per share of (i) $4.40 to $11.70 using the estimated 2017 one-year forward EV/Adjusted EBITDA multiples and estimated 2018 Adjusted EBITDA and (ii) $5.89 to $12.53 using the estimated 2018 one-year forward EV/Adjusted EBITDA multiples and estimated 2019 Adjusted EBITDA" for the pro forma combined company;

(i)     the statements on pages 81 of the Proxy representing that Goldman Sachs opined that "the exchange ratio pursuant to the merger agreement was fair from a financial point of view" to EarthLink stockholders;

(j)     the statements on pages 66-67 of the Proxy representing that relying on the fairness opinions of Foros and Goldman Sachs, the EarthLink Board decided to approve the Merger; and

(k)     the statements on pages 6, 16, 51, 65 of the Proxy that the Merger and Merger consideration is "advisable" and "in the best interests" of EarthLink stockholders.

117.    The omitted information identified in ¶¶110-111 rendered the statements in the above paragraph misleading because the omitted information materially contradicted the explicit and implicit representations that shareholders would understand from the statements in the above paragraph.

118.    On February 24, 2017, pursuant to an uninformed vote, EarthLink and Windstream obtained shareholder approval of the Merger.

119.    On February 27, 2017, EarthLink and Windstream announced that they completed the Merger.

120.    As a result of the Merger, Plaintiff and the members of the Class acquired 0.818 shares of Windstream common stock for each EarthLink share owned.

121.    In or around August 2017, the misleading nature of defendants' statements became clear (and became fully known to Plaintiff) as, in contradiction of Foros' and Goldman Sachs' valuations, Windstream stock fell 45.4%.   Since August 2, 2017, the stock of the combined company consistently traded below $2.00 per share.   As of February 9, 2018, Windstream closed at $1.39 per share.

## COUNT I

### For Violations of §14(a) of the 1934 Act and Rule 14a-9
### Promulgated Thereunder Against All Defendants

122.    Plaintiff repeats and realleges each allegation set forth herein.

123.    The Proxy and Proxy Supplement were prepared, reviewed and/or disseminated jointly by all defendants.   The Proxy and Proxy Supplement contained materially misleading statements and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

124.    Defendants were jointly responsible for the misleading statements in the Proxy and Proxy Statement. The Proxy and Proxy Supplement purport to provide accurate information. The Proxy and Proxy Supplement purport to provide material information in support of their recommendation of the Merger.   Defendants were provided with or had with or had unlimited access to copies of the Proxy and Proxy Supplement and had the ability to prevent or correct the issuance of the statements Plaintiff alleges to be misleading.

125.    Defendants were at least negligent in filing the Proxy and Proxy Supplement with these materially false and misleading statements.

126.    As a direct result of defendants' negligent preparation, review, and dissemination of the false and/or misleading Proxy and Proxy Supplement, Plaintiff and the Class were induced to vote their shares and accept the inadequate Merger consideration in connection with the Merger.

127.    The false and/or misleading Proxy and Proxy Supplement used to obtain shareholder approval of the Merger deprived Plaintiff and the Class of their right to a fully informed shareholder vote in connection therewith and the full and fair value for their EarthLink shares.

128.    At all times relevant to the dissemination of the materially false and/or misleading Proxy, defendants were aware of and/or had access to the true facts concerning EarthLink's true value, which was far greater than the Merger consideration EarthLink's stockholders received.

129.    Thus, as a direct and proximate result of the dissemination of the false and misleading Proxy and Proxy Supplement defendants used to obtain shareholder approval of and thereby consummate the Merger, Plaintiff and the Class have suffered damage and actual economic losses (*i.e.*, the difference between the consideration EarthLink shareholders received in the Merger and EarthLink's true value at the time of the Merger) in an amount to be determined at trial.

130.    The false and misleading statements in the Proxy and Proxy Supplement were material in that a reasonable shareholder would consider them important in deciding how to vote on an acquisition. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in a proxy and in other information reasonably available to shareholders. The false and misleading Proxy and Proxy Supplement had the intended effect: a materially misinformed vote of the EarthLink shareholders, who voted in favor of the Merger on February 24, 2017.

31

131.     By reason of the foregoing, defendants have violated §14(a) of the 1934 Act and SEC Rule 14a-9(a) promulgated thereunder.

132.     Because of the false and misleading statements in the Proxy and Proxy Supplement, Plaintiff and the members of the Class were harmed.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against the EarthLink Individual Defendants and the Windstream Defendants

133.     Plaintiff repeats and realleges each allegation set forth herein.

134.     The EarthLink Individual Defendants acted as controlling persons of EarthLink within the meaning of §20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of EarthLink, and their participation in and/or awareness of the operations of EarthLink, and/or intimate knowledge of the false statements contained in the Proxy and Proxy Supplement filed with the SEC, the EarthLink Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the EarthLink, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

135.     The Windstream Individual Defendants acted as controlling persons of Windstream within the meaning of §20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Windstream, and their participation in and/or awareness of the operations of Windstream, and/or intimate knowledge of the false statements contained in the Proxy and Proxy Supplement filed with the SEC, the Windstream Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Windstream, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

136.   In particular, each of the EarthLink Individual Defendants and Windstream Individual Defendants had direct and supervisory involvement in the day-to-day operations of EarthLink and Windstream, and, therefore, is presumed to have had the power to control or influence the particular statements giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy and Proxy Supplement contained the unanimous recommendation of each of the EarthLink Individual Defendants and Windstream Individual Defendants to approve the Merger.  The EarthLink Individual Defendants and Windstream Individual Defendants were thus directly involved in the making of the Proxy and Proxy Supplement.

137.   The Windstream Defendants also acted as controlling persons of the EarthLink Defendants within the meaning of §20(a) of the 1934 Act as alleged herein.

138.   The Windstream Defendants had the contractual right and obligation to "jointly prepare and cause to be filed with the SEC" the Proxy and Proxy Supplement together with the EarthLink Defendants, as they did.  The Windstream Defendants participated in the solicitation of proxies through the Proxy and Proxy Supplement, recommended in favor of the Merger, and/or participated in the preparation of the Proxy and Proxy Supplement.

139.   By virtue of the foregoing, the EarthLink Individual Defendants and the Windstream Defendants have violated §20(a) of the 1934 Act.

140.   As a direct and proximate result of these defendants' conduct, Plaintiff and all other Class members were harmed.

## COUNT III

### For Violations of §11 of the 1933 Act
### Promulgated Thereunder Against the Windstream Individual Defendants

141.   Plaintiff repeats and realleges each allegation set forth herein.

142. This count is brought by Plaintiff on behalf of himself and all other Class members who received shares of Windstream common stock traceable to the Proxy and Proxy Supplement.

143. Plaintiff asserts solely strict liability and negligence claims in this count.

144. The Proxy was inaccurate and misleading, contained untrue statements of material facts, omitted to state facts necessary to make the statements made not misleading, as alleged herein.

145. As the issuer of the common stock, Windstream is strictly liable to the members of the Class who received Windstream common stock pursuant to the Proxy and Proxy Supplement.

146. The Windstream Individual Defendants each signed the Proxy and Proxy Supplement, and/or were responsible for the contents and dissemination of the Proxy and Proxy Supplement, and/or failed to make a reasonable investigation and did not possess reasonable grounds for the belief that the statements contained in the Proxy and Proxy Supplement were true and/or did not contain untrue statements of material facts. The Windstream Individual Defendants are therefore liable to the members of the Class who received shares of Windstream common stock pursuant to the Proxy and Proxy Supplement.

147. Plaintiff and other members of the Class received Windstream common stock traceable to the Proxy and Proxy Supplement, and did not know, or in the exercise of reasonable diligence could not have known, of the untrue statements and omissions of material fact contained therein.

148. Plaintiff and the members of the Class who acquired Windstream common stock traceable to the Proxy and Proxy Supplement suffered substantial damage as a direct and proximate result of the untrue statements of material facts and/or omissions described in this count.

149.     This claim is brought within the applicable statute of limitations because less than one year has elapsed from the time that Plaintiff and the other members of the Class discovered or reasonably could have discovered the facts upon which this count is based.  Less than three years have elapsed from the time that Plaintiff and other Class members received the shares of Windstream common stock pursuant to the Proxy and Proxy Supplement.

150.     By reason of the foregoing, the defendants named in this count have violated §11 of the 1933 Act.

## COUNT IV

**For Violations of §15 of the 1933 Act
Promulgated Thereunder Against the Windstream Individual Defendants**

151.     Plaintiff repeats and realleges each allegation set forth herein.

152.     This count is brought by Plaintiff on behalf of himself and all other Class members who received shares of Windstream common stock traceable to the Proxy and Proxy Supplement.

153.     Plaintiff asserts solely strict liability and negligence claims in this count.

154.     The Windstream Individual Defendants were each control persons of Windstream at the time of the Merger in that they exercised actual power over Windstream by virtue of their positions as directors and/or senior officers of Windstream.  As directors and/or senior officers of Windstream, the Windstream Individual Defendants were able to, and did, influence, directly and indirectly, the contents of the Proxy and Proxy Supplement, as well as Windstream's decision to effectuate the Merger, and on what terms.

155.     By reason of the foregoing, the defendants named in this count violated §15 of the 1933 Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment, in Plaintiff's favor and in favor of the Class and against defendants, as follows:

A.      Declaring that this action is properly maintainable as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and certifying Plaintiff as Class representative and Plaintiff's counsel as Class counsel;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees and other costs; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

March 19, 2018                    Respectfully submitted,

_Randall K. Pulliam_
Randall K. Pulliam (ABN 98105)
Hank Bates (ABN 98063)
**CARNEY BATES & PULLIAM, PLLC**
519 W. 7th Street
Little Rock, AR 72201
Tel: (501) 312-8500
Fax: (501) 312-8505
rpulliam@cbplaw.com
hbates@cbplaw.com

**JOHNSON FISTEL, LLP**
W. Scott Holleman (to be admitted _Pro Hac Vice_)
99 Madison Avenue, 5th Floor
New York, NY 10016
Tel: (212) 802-1486
Fax: (212) 602-1592

_Counsel for Proposed Plaintiffs' Class_

DocuSign Envelope ID: C0748C37-884F-488B-8671-8B3A44253CC7

# CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

Robert Murray ("Plaintiff") declares:

1.      Plaintiff has reviewed a complaint and authorized its filing.

2.      Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff held 10,000 shares of Earthlink Holdings Corp. stock as of January 23, 2017, was a holder of Earthlink Holdings Corp. stock at all relevant times, and received 8,180 shares of Windstream common stock pursuant to the Merger.

5.      Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification.

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 14th day of March, 2018.

DocuSigned by:

*Robert Murray*

D1EDF2E99B8F428...

Robert Murray