IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ROBERT MURRAY, On Behalf of Himself
And All Others Similarly Situated                                    PLAINTIFF

v.                                      No. 4:18-cv-202 JM

EARTHLINK HOLDINGS CORP, *et al.*                                   DEFENDANTS

ORDER

Plaintiff Robert Murray filed this purported class action for securities violations arising out of the 2017 merger between Windstream Holdings, LLC and Earthlink Holdings Corp. Pending are two motions to dismiss the Second Amended Complaint ("SAC").[1] One motion was filed by Defendants Windstream Holdings, Inc. ("Windstream"); its directors Carol B. Armitage, Samuel E. Beall III, Jeannie H. Diefenderfer, Robert E. Gunderman, Jeffrey T. Hinson, William G. LaPerch, Larry Laque, Kristi Moody, Michael G. Stoltz, Tony Thomas and Alan L. Wells; and EarthLink Holdings Corp. ("EarthLink") (all collectively referred to as the "Windstream Defendants"). (Doc. No. 78). The remaining defendants, directors of Earthlink—Susan D. Bowick, Joseph F. Eazor, Kathy S. Lane, Garry K. McGuire, R. Gerard Salemme, Julie A. Shimer, Marc F. Stoll and Walter L. Turek ( "EarthLink Directors"), filed the second. (Doc. No. 80). The defendants have adopted each other's arguments. Plaintiff filed a single response to both. The Court will also address the two motions collectively.

I. Procedural History

Plaintiff, a former EarthLink stockholder, filed this case on March 3, 2018 for violations of federal securities law in connection with the merger of EarthLink and Windstream. An amended complaint was filed on July 27, 2018 before Defendants responded to the original

---

[1] Doc. No. 74.

complaint. Defendants filed motions to dismiss the first amended complaint ("FAC") for failure to state a claim and as being barred by the statute of limitations. (Doc. Nos. 21, 25). A hearing was set for oral arguments but was continued after Windstream filed for Chapter 11 bankruptcy on February 25, 2019.[2] The bankruptcy court determined that the automatic stay extended to all the defendants in this case, but it granted Plaintiff limited relief from the stay for this Court to hear oral argument and rule on the pending motions to dismiss. (Doc. No. 50-1). The Court heard argument on the then-pending motions to dismiss (Doc. Nos. 21, 25) on August 22, 2019. The automatic bankruptcy stay was lifted on June 26, 2020 when the bankruptcy court confirmed Windstream's plan of reorganization. Plaintiff filed a motion for leave to amend a second time, attaching a redlined copy of the proposed SAC, and the parties jointly moved for an order accepting the filing of the SAC. (Doc. Nos. 69, 72). Briefing on the motions to dismiss the SAC was completed in October of 2021. Plaintiff filed a notice of recent authority on April 20, 2022 which spawned more briefing. Plaintiff filed another notice of recent authority on October 7, 2022, to which no response was filed. The Court apologizes to the parties for the delay in ruling.

## II. The Second Amended Complaint

The SAC alleges that as of August 8, 2016, Earthlink was a strong, consistently performing company that had generated positive income for the second quarter in a row. On October 5, 2016, Windstream submitted an indication of interest to Earthlink contemplating a merger. One month later, the EarthLink Directors unanimously approved the merger which was then completed on February 27, 2017. Windstream filed for Chapter 11 bankruptcy relief two years following the merger. When its reorganization plan was confirmed by the bankruptcy court in June of 2020, all of Windstream's shares of common stock were declared "cancelled,

---

[2] In re: Windstream Holdings, et al; Case No. 19-22312 (RDD), United States Bankruptcy Court Southern District of New York.

discharged and of no force and effect." (Doc. No. 74, ¶53).

Plaintiff seeks to represent a class of individuals who acquired Windstream shares as a result of "Offering Documents" filed with the SEC in advance of the merger and also individuals who held Earthlink stock at the time of the merger. The Offering Documents include a registration statement filed by Windstream on December 8, 2016 (the "Registration Statement"); a joint proxy statement/prospectus filed by Windstream on January 24, 2017 (the "Joint Proxy/Prospectus"); and a proxy statement filed by EarthLink on January 24, 2017 (the "Proxy").

The SAC alleges that Windstream historically paid robust dividends, and the Offering Documents stated that the merger would provide support for the continued payment of the $.60 per share annual dividends, which was a 'substantial increase in the annual dividend currently received by the EarthLink stockholders." (Doc. No. 74, ¶ 149). When Earthlink and Windstream merged, each share of EarthLink common stock was exchanged for .818 shares of Windstream common stock. The Windstream stock was valued at $39.25 at that time of the merger.

Things did not go well for Windstream following the merger. It struggled to keep up with the competitive market and had increasingly poor quarterly returns. On August 3, 2017, about five months after the merger, Windstream announced that it was ending its quarterly stockholder dividends effective immediately. By June of 2018 Moody's had downgraded Windstream's debt level to "distressed," and Windstream filed for bankruptcy soon after.

Over a third of the SAC relates to a complex arrangement Windstream[3] had with Uniti Group, Inc. that began in March of 2015 (the "Uniti Arrangement"). Plaintiff alleges that Windstream established Uniti as a new publicly traded Real Estate Investment Trust ("REIT").

---

[3] Windstream Holdings will continue to be referred to as Windstream, not to be confused with Windstream Services.

3

Next Windstream's operating subsidiaries, Windstream Services, transferred assets they valued at $7.4 billion to Uniti in exchange for cash and Uniti stock. Then Windstream and Uniti entered a lease in which Uniti leased the assets back to Windstream Services in exchange for annual payments from Windstream for an initial rate of $650,000 million which included rent, real estate taxes, insurance, and maintenance of the assets. (Doc. No. 75, ¶¶ 54-56). These lease payments were not set at fair market value. The Uniti Arrangement was "disguised financing" in an attempt to provide a short-term economic solution for Windstream's growing challenges. Plaintiff alleges that Windstream misrepresented the Uniti Arrangement to the SEC, allowing it to underreport the size of its liabilities and to avoid a breach of restrictive covenants in an indenture from a $700 million note. Plaintiff alleges that the mischaracterization of the Uniti Arrangement the Offering Documents supports its claims for securities act violations.

     In the SAC, Plaintiff asserts five claims arising out of the Offering Documents. Count I alleges violations of §14(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 14a-9 based on materially misleading statements and failure to disclose material facts in the Joint Proxy/Prospectus and the Proxy. Count II asserts a controlling persons claims against the Windstream Defendants and the Earthlink Directors pursuant to §20(a) of the Exchange Act. Count III alleges violations of §11 of the Securities Act of 1933 ("Securities Act") against the Windstream Defendants based on inaccurate, misleading, and omitted facts contained in the Registration Statement. Count IV alleges violations of §12(a)(2) of the Securities Act against the Windstream Defendants based on the Joint Proxy/Prospectus. Count V alleges a controlling persons claim pursuant to §15 of the Securities Act against the Windstream Individual Defendants who promulgated the Prospectus. Plaintiff explicitly states that he is bringing claims

for strict liability or negligence under the statutes, not fraud or recklessness. These are the same five claims contained in the FAC.

III. Motions to Dismiss

A. Statute of Repose

Statutes of repose "protect defendants from prolonged exposure to liability." *Fedance v. Harris*, 1 F.4th 1278, 1284 (11th Cir. 2021). They are "statutes of limitations more severe cousins" that "strike a stronger defendant-friendly balance" and serve as "an absolute bar on a defendant's temporal liability." *Se. Pennsylvania Transportation Auth. v. Orrstown Fin. Servs. Inc.*, 12 F.4th 337, 341 (3d Cir. 2021) (citations omitted). The parties agree that the statute of repose for each of Plaintiff's claims is three years, and "[i]n no event shall any such action be brought" outside that time. *See* 15 U.S.C.A. § 77m and *Dekalb Cnty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393 (2d Cir. 2016), *as amended* (Apr. 29, 2016).

Defendants argue that the statute of repose began running on February 27, 2017, the date the merger was completed. They do not challenge that both the original complaint and the FAC were filed well within the three-year statute of repose (March 3, 2018 and July 27, 2018, respectively). Defendants argue that when he filed the SAC, Plaintiff asserted new claims, that they call the Uniti Claims, for the first time. It is these "claims" that Defendants argue are barred. The Court finds that Defendants "had no right to repose as long as [Plaintiff's] action was pending." *SEPTA* at 353.

B. Statute of Limitations

As an affirmative defense, the statute of limitations can be considered on a motion to dismiss only "when there is some obvious bar to securing relief on the face of the complaint." *York Cnty. on Behalf of Cnty. of York Ret. Fund v. HP, Inc.*, 65 F.4th 459, 466 (9th Cir. 2023)

5

(quotation omitted). It is "[o]nly when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Weatherly v. Ford Motor Co.*, 994 F.3d 940, 943–44 (8th Cir. 2021) (quoting *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004)).

The statute of limitations for Plaintiff's claims under §14(a) of Exchange Act and §§ 11 and 12(a)(2) of the Securities Act is one year after the discovery of the facts constituting the violation "or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m; *Westinghouse Elec. Corp. v. Franklin,* 993 F.2d 349, 353 (3d Cir.1993); *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 648 (2010). Defendants argue that the clock can start running even earlier, at a time when a reasonable person would be on "inquiry notice" that should prompt an investigation and lead to discovery of the violations. However, the Supreme Court has held that it is discovery (or discoverability), not inquiry notice, that starts the limitations period running for Plaintiff's claims.

> If the term "inquiry notice" refers to the point where the facts would lead a reasonably diligent plaintiff to investigate further, that point is not necessarily the point at which the plaintiff would already have discovered facts showing scienter or other "facts constituting the violation." But the statute says that the plaintiff's claim accrues only after the "discovery" of those latter facts. Nothing in the text suggests that the limitations period can sometimes begin *before* "discovery" can take place.

*Merck* at 651. *See also In re Willis Towers Watson plc Proxy Litig.*, 937 F.3d 297, 302–03 (4th Cir. 2019).

Defendants argue that the Uniti allegations are new to the SAC and are barred by the one-year statute of limitations.[4] Plaintiff argues that the allegations in the SAC "arose out of the

---

[4] Defendants' arguments focus on the Uniti allegations. To the extent their arguments may be intended to encompass the entirety of the SAC, the motion is denied. The Court heard oral argument on the statute of limitations issue with respect to the FAC on August 22, 2019 and denied the motion to dismiss from the

6

conduct, transaction, or occurrence set forth or attempted to be set forth" in the FAC and relate back to the date is was filed pursuant to Federal Rule of Civil Procedure 15(c)(2). The Supreme Court described the purpose of allowing claims to relate back to earlier filings is "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010).

The FAC alleges Defendants made false statements and or omitted material fact in the Offering Documents regarding Windstream's "successful transformation" of its business, its stability, and it expectations regarding continued dividend payments. It alleges that Windstream received a notice of default on September 21, 2017 from a holder of Windstream notes. The notice asserted violations of covenants of the indenture under which the notes were issued as a result of "the transfer of certain assets and the subsequent lase of those assets in connection with the spinoff of [Uniti] in April of 2015." (Doc. No. 18, ¶ 111). The FAC also cites to a report stating that "Moody's views Windstream as having limited leverage tolerance due to its low asset coverage following the 2015 sale and leaseback transaction of its outside plant and real estate assets to Uniti Group.) (Doc. No. 18, ¶ 115). While the SAC goes into significantly more detail about the Uniti Arrangement and how it resulted in materially misleading statements and omissions of material facts in the Offering Documents, the Court finds that the Uniti claims in the SAC relate back to the filing of the FAC. Plaintiff has not pleaded himself out of Court.

C. Failure to State a Claim

A complaint must contain "a short and plain statement of the claim that the pleader is entitled to relief" to survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim

---

bench. (Transcript at Doc. No. 83, pp. 17-18). The Court reaches the same result with respect to those same claims in the SAC.

7

upon which relief can be granted. Fed. R. Civ. P. 8(a)(2). The complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests and "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A plaintiff who alleges a claim under § 14(a)[5] must show that "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Carpenters' Pension Fund of Illinois v. Neidorff*, 30 F.4th 777, 786 (8th Cir. 2022) (citation omitted).

"To establish a Section 11 claim, a plaintiff must show that he or she bought the security and that there was a material misstatement or omission." *In re Acceptance Ins. Cos. Sec. Litig.,* 423 F.3d 899, 903 (8th Cir.2005); *see Romine v. Acxiom Corp.,* 296 F.3d 701, 704 (8th Cir.2002). Once these two elements are proven, "[t]he issuer's liability is virtually absolute, even for most innocent misstatements." *Id.* (internal quotation and citation omitted). Section 11 imposes "a stringent standard of liability to ensure that registration statements are prepared in compliance with the disclosure provisions of the Act." *Id.*

The requirements to state a claim for a violation of § 12(a)(2) is nearly the same as for a § 11 claim, but § 12(a)(2) applies to statements or omissions in a prospectus rather than in a registration statement. The securities buyer "need prove only that there was a material

---

[5] "Section 14(a) ... provides that it is unlawful to solicit a proxy respecting any registered security in contravention of SEC rules and regulations. SEC Rule 14a-9(a) provides that no proxy statement may contain any false or misleading statement or omission with respect to a material fact." *Carpenters' Pension Fund of Illinois v. Neidorff*, 30 F.4th 777, 786 (8th Cir. 2022) (quoting *SEC v. Shanahan*, 646 F.3d 536, 546 (8th Cir. 2011)).

misstatement or omission in the prospectus or oral communication." *In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 318 (8th Cir. 1997). As with § 11 claims, defendants are held strictly liable. *Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1011 (8th Cir. 2015). The only defense provided to the seller "is that he did not know of the false material misstatement and, in the exercise of due diligence, could not have discovered the misstatement." *NationsMart* at 318.

With respect to all three securities violations, "[a] fact is material 'when there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.' " *Carpenters' Pension Fund of Illinois v. Neidorff*, 30 F.4th 777, 787 (8th Cir. 2022) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). "The question of materiality hinges on the particular circumstances of the company in question[.]" *Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d 824, 829 (8th Cir. 2003). Materiality is generally a fact question for the jury unless "a court determines that no reasonable investor could have been swayed by the alleged misrepresentation." *In re AMDOCS Ltd. Sec. Litig.*, 390 F.3d 542, 547 (8th Cir. 2004).

Plaintiff also alleges that the Offering Documents omitted material information required to be disclosed pursuant to Items 303 and 503[6] of SEC Regulations S-K. Item 303 requires disclosure of "any known trends ... events or uncertainties that will result in or that are reasonably likely to result in the registrant's liquidity increasing or decreasing in any material way." 17 C.F.R. § 229.303(b)(1)(i). Plaintiffs must allege that "(1) a registrant knew about a

---

[6] Item 503(c) has been modernized and "moved to a new Item 105" which eliminated the examples of risk factors that appeared in the Item 503. *FAST Act Modernization and Simplification of Regulation S-K*, 84 FR 12674-01, 2019 WL 1437180, at *1 (Apr.2, 2019). The Court will continue to refer to it as Item 503 consistent with the briefing.

trend, event, or uncertainty before an offering; (2) the known trend, event, or uncertainty is reasonably likely to have material effects on the registrants' financial condition or results of operation; and (3) the offering documents failed to disclose the known trend, event, or uncertainty." *Employees' Ret. Sys. of the City of Baton Rouge & Par. of E. Baton Rouge v. MacroGenics, Inc.*, 61 F.4th 369, 392 (4th Cir. 2023) (quoting *Silverstrand Inv. v. AMAG Pharm., Inc.*, 707 F.3d 95, 103 (1st Cir. 2013) (cleaned up)). Item 503 creates liability where "the registrant knew, as of the time of the offering, that (1) a risk factor existed; (2) the risk factor could adversely affect the registrant's present or future business expectations; and (3) the offering documents failed to disclose the risk factor." *Silverstrand* at 103.

      Applying the above pleading requirements to the SAC, the Court finds that Plaintiff has sufficiently stated a claim for each of his alleged securities violations. Since it is denying Defendants' motions to dismiss, and any ultimate appeal would be a *de novo* standard of review, the Court will not go into detail on its ruling. The parties well and fully briefed the law as it relates to Plaintiff's specific allegations. Plaintiff's chief complaints are that the Offering Documents contained misleading half-truths and material omissions regarding Windstream's long-term debt levels and the sustainability of the dividend. The Court finds that the bold, italicized statements in SAC ¶¶ 135-137, 139-140, 145, and 146-149—particularly in light of the omissions alleged in SAC ¶¶ 138(a)-(j), 141, 150(a)-(j), 151—are sufficient to state a claim for violations of § 14(a) of the Exchange Act and §§11, 12(a)(2) of the Securities Act. The same is true for the derivative controlling person claims. Taking Plaintiff's allegations as true and drawing reasonable inferences in his favor, the SAC is sufficient to survive Defendants' motions to dismiss.

THEREFORE, Defendants' motions to dismiss (Doc. Nos. 78, 80) are DENIED. Defendants are ordered to file answers to the SAC by July 21, 2023.

IT IS SO ORDERED this 30th day of June, 2023.

_____
James M. Moody Jr.
United States District Judge