UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| ROBERT MURRAY, On Behalf of Himself and All Others Similarly Situated, | ) ) ) | No. 4:18-cv-00202-JM |
| | ) ) | CLASS ACTION |
| Plaintiff, | ) ) | STIPULATION OF SETTLEMENT |
| vs. | ) ) | |
| EARTHLINK HOLDINGS CORP., et al. | ) ) | |
| Defendants. | ) ) | |

4881-8624-3516.v5

This Stipulation of Settlement (the "Stipulation") dated September 4, 2024, is made and entered into by and among Lead Plaintiff Robert Murray ("Lead Plaintiff"), on behalf of himself and the Settlement Class (defined below), on the one hand, and Defendants EarthLink, Windstream, Susan D. Bowick, Joseph F. Eazor, Kathy S. Lane, Garry K. McGuire, R. Gerard Salemme, Julie A. Shimer, Marc F. Stoll, Walter L. Turek, Carol B. Armitage, Samuel E. Beall III, Jeannie H. Diefenderfer, Robert E. Gunderman, Jeffrey T. Hinson, William G. LaPerch, Larry Laque, Kristi Moody, Michael G. Stoltz, Tony Thomas, and Alan L. Wells (collectively, "Defendants"), on the other hand, by and through their undersigned counsel.  This Stipulation is intended to fully, finally, and forever resolve, discharge, and settle the Action and the Released Claims, subject to the approval of the Court and the terms and conditions of this Stipulation.

*Whereas*:

On March 19, 2018, Lead Plaintiff filed a Class Action Complaint for Violations of Federal Securities Laws in the matter styled, *Murray v. EarthLink Holdings Corp., et al.*, No. 4:18-cv-00202, in the United States District Court for the Eastern District of Arkansas (the "Action").  (ECF 1.)  On June 4, 2018, Lead Plaintiff filed a motion requesting an order: (1) appointing Robert Murray as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §77z-1(a)(3)(B) and 15 U.S.C. §78u-4(a)(3)(B); and (2) approving Lead Plaintiff's selection of Robbins Geller Rudman & Dowd LLP as lead counsel.  ECF 4.  On June 22, 2018, the Court granted that motion and appointed Robert Murray as lead plaintiff and Robbins Geller Rudman & Dowd LLP as lead counsel.  (ECF 13.)

On July 27, 2018, Lead Plaintiff filed an Amended Class Action Complaint for Violations of Federal Securities Laws, asserting claims pursuant to §§11, 12(a)(2) and 15 of the Securities Act of 1933 (the "1933 Act"), §§14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder (the

"Amended Complaint").  (ECF 18.)  On September 13, 2018, Defendants filed motions to dismiss the Amended Complaint (ECFs 21, 22, 24-27), Lead Plaintiff filed an opposition brief on October 19, 2018 (ECF 37), and Defendants filed reply briefs on November 29, 2018 (ECFs 40-41).  On August 22, 2019, the Court held a hearing on the motions to dismiss and took the matter under advisement.  (ECF 53.)

On February 25, 2019, Windstream and its wholly-owned subsidiaries, including EarthLink, filed voluntary petitions for reorganization under Chapter 11 of the United States Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  On April 1, 2020, Windstream filed a Joint Chapter 11 Plan of Reorganization in the Bankruptcy Court.  (ECF 1631.)  The Bankruptcy Court entered an order confirming Windstream's Chapter 11 Plan of Reorganization on June 26, 2020, and the effective date of the Plan of Reorganization occurred on September 21, 2020.  (ECF 2244.)

On May 27, 2021, Lead Plaintiff filed the Second Amended Class Action Complaint for Violations of Federal Securities Laws, also asserting claims pursuant to §§11, 12(a)(2) and 15 of the 1933 Act, §§14(a) and 20(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder (the "Second Amended Complaint").  (ECF 74.)  On July 15, 2021, Defendants filed motions to dismiss the Second Amended Complaint (ECFs 78-82), Lead Plaintiff filed an opposition brief on September 7, 2021 (ECF 84), and Defendants filed reply briefs on October 6, 2021 (ECFs 85-86).  On June 30, 2023, the Court entered an Order denying Defendants' motions to dismiss the Second Amended Complaint.  (ECF 96.)

Between September 2023 and May 2024, the parties conducted extensive fact and class certification-related discovery, including document production, depositions, and motion practice.  On February 23, 2024, Lead Plaintiff filed a Motion for Partial Judgment on the Pleadings (ECFs 159-161), Defendants filed an opposition brief on March 22, 2024 (ECFs 168-169), and Lead

Plaintiff filed a reply brief on April 5, 2024 (ECF 172).  After full briefing, the Court set a hearing on that motion for May 17, 2024.  The Court stayed all proceedings, including the hearing, after the parties advised the Court that they had reached a settlement in principle.

On May 6, 2024, after extensive arm's-length, good faith negotiations facilitated by mediator Robert A. Meyer, the parties reached agreement on the terms of a settlement.  On the same day, the parties notified the Court that they had reached an agreement in principle to settle the litigation and requested that the Court stay discovery and all proceedings, other than in connection with the settlement.  On May 8, 2024, the Court entered an order staying the litigation pending the finalization of the settlement.  (ECF 179.)

## I.     TERMS OF THIS STIPULATION

NOW THEREFORE, without any concession by Lead Plaintiff that the Action lacks merit, and without any admission or concession by Defendants of any liability or wrongdoing or lack of merit in their defenses whatsoever, it is hereby **STIPULATED AND AGREED**, by and among Lead Plaintiff (on behalf of himself and the Settlement Class) and Defendants, subject to approval of the Court, that the Action shall be dismissed with prejudice, and all Released Plaintiffs' Claims (including Unknown Claims) and all Released Defendants' Claims (including Unknown Claims), as against all Released Parties, shall be fully, finally, and forever compromised, settled, released, and discharged upon and subject to the following terms and conditions of this Stipulation:

### 1.     Definitions

As used in this Stipulation, and any exhibits attached hereto, the following capitalized terms, shall have the meanings set forth below.

1.1     "Action" means the class action litigation styled, *Murray v. EarthLink Holdings Corp., et al.*, No. 4:18-cv-00202-JM (E.D. Ark.).

1.2 "Amended Complaint" means the Amended Class Action Complaint for Violations of Federal Securities Laws filed in the Action on July 27, 2018.

1.3 "Authorized Claimant" means any Settlement Class Member who submits a valid Claim to the Claims Administrator that is accepted for payment from the Net Settlement Fund.

1.4 "Bar Date" means a date no later than ninety (90) calendar days after mailing of the Notice or such other time as may be set by the Court.

1.5 "Claim(s)" means a paper claim submitted on a Proof of Claim form or an electronic claim that is submitted to the Claims Administrator.

1.6 "Claimant" means any Settlement Class Member that submits a Claim to the Claims Administrator in such form and manner, and within such time, as the Court shall prescribe.

1.7 "Claims Administrator" means Verita Global or such other firm retained by Lead Plaintiff and Lead Counsel, subject to the approval of the Court, to provide all notices approved by the Court to potential Settlement Class Members and to administer the Settlement.

1.8 "Court" means the United States District Court for the Eastern District of Arkansas.

1.9 "Defendants" means EarthLink, Windstream, and the Individual Defendants.

1.10 "Defendants' Counsel" means the law firms Skadden, Arps, Slate, Meagher & Flom LLP; Norton Rose Fulbright US LLP; and Wright, Lindsey & Jennings LLP.

1.11 "EarthLink" means EarthLink Holdings Corp.

1.12 "Effective Date," or the date upon which the Settlement becomes Effective, means the first date by which all of the events and conditions specified in ¶7.1 of this Stipulation have been met, have occurred, or have been waived.

1.13 "Escrow Account" means the separate interest bearing escrow account designated and controlled by Lead Counsel into which the Settlement Amount will be deposited for the benefit of the Settlement Class.

4881-8624-3516.v5

1.14    "Escrow Agent" means Robbins Geller Rudman & Dowd LLP.

1.15    "Fee and Expense Application" means the application or applications Lead Counsel may submit to the Court for an award from the Settlement Fund for attorneys' fees and payments and expenses incurred in connection with prosecuting the Action, plus any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court.  The Fee and Expense Application may also include an application for a Lead Plaintiff Award.

1.16    "Fee and Expense Award" means any attorneys' fees and expenses awarded by the Court, as set forth in Section 6.

1.17    "Final" means, with respect to the Judgment or, if applicable, any other court order, that no appeal has been filed and the prescribed time for commencing any appeal has expired or, if an appeal has been filed, either (a) the Judgment or other order has been finally affirmed or (b) the appeal from the Judgment or other order has been dismissed, and in either case, the time for any reconsideration or further appellate review has passed.  For purposes of this definition of "Final," an "appeal" includes any motion to alter or amend under Rule 52(b) or Rule 59(e) of the Federal Rules of Civil Procedure, any motion for reconsideration, any appeal as of right, discretionary appeal, interlocutory appeal, petition for writ of certiorari, or other proceeding involving writs of certiorari or mandamus, and any other proceedings of like kind.  However, any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to (i) the Plan of Allocation, (ii) the procedures for determining Authorized Claimant's recognized claims, or (iii) the Court's Fee and Expense Award, Lead Plaintiff Award, or any other award of attorneys' fees, costs, or expenses to Lead Counsel or Lead Plaintiff, shall not in any way delay or affect the time set forth above for the Judgment to become Final or otherwise preclude the Judgment from becoming Final.

1.18    "Individual Defendants" means Susan D. Bowick, Joseph F. Eazor, Kathy S. Lane, Garry K. McGuire, R. Gerard Salemme, Julie A. Shimer, Marc F. Stoll, Walter L. Turek, Carol B. Armitage, Samuel E. Beall III, Jeannie H. Diefenderfer, Robert E. Gunderman, Jeffrey T. Hinson, William G. LaPerch, Larry Laque, Kristi Moody, Michael G. Stoltz, Tony Thomas, and Alan L. Wells.

1.19    "Judgment" means (i) the Final Judgment and Order of Dismissal with Prejudice to be entered by the Court finally approving the Settlement, substantially in the form attached hereto as Exhibit B, or (ii) any form of final judgment that may be entered by the Court in a form other than the form attached hereto as Exhibit B if none of the Settling Parties elects to terminate the Settlement in accordance with this Stipulation because of such variance.

1.20    "Lead Counsel" means the law firm Robbins Geller Rudman & Dowd LLP.

1.21    "Lead Plaintiff" means Robert Murray.

1.22    "Lead Plaintiff Award" means any award by the Court to the Lead Plaintiff for his service on behalf of the Settlement Class or for his reasonable time, costs, and expenses directly relating to the representation of the Settlement Class.

1.23    "Mediator" means Robert A. Meyer.

1.24    "Merger" means the transaction completed on February 27, 2017, whereby pursuant to the terms of the Merger Agreement dated November 5, 2016, EarthLink Holdings Corp. merged into Europa Merger Sub, Inc., a wholly-owned subsidiary of Windstream Services, LLC, and survived, and immediately following, merged with Europa Merger Sub, LLC, a wholly-owned subsidiary of Windstream Services, LLC, with the merger subsidiary surviving and changing its name to EarthLink Holdings, LLC.

1.25    "Net Settlement Fund" means the Settlement Fund less: (i) any Fee and Expense Award and Lead Plaintiff Award; (ii) Notice and Administration Expenses; (iii) Taxes and Tax Expenses; and (iv) any other fees or expenses awarded by the Court.

1.26    "Notice" means the Notice of Pendency and Proposed Settlement of Class Action described in paragraph 6 of the Preliminary Approval Order, as approved by the Court, which shall be substantially in the form attached hereto as Exhibit A-1.

1.27    "Notice and Administration Expenses" means reasonable costs and expenses actually incurred in connection with providing notice to the Settlement Class, locating Settlement Class Members, soliciting claims, assisting with the submission of Claims, processing Proofs of Claim, administering and distributing the Net Settlement Fund to Authorized Claimants, paying the transfer agent's actual and reasonable fees and expenses, if any, and paying escrow fees and costs, if any.

1.28    "Notice Date" means the date 20 calendar days after the Court enters the Preliminary Approval Order.

1.29    "Offering Documents" means (a) the registration statement on Form S-4 that Windstream filed with the SEC on December 8, 2016, as amended on January 9, 2017, and January 13, 2017 (which, in the case of the January 13, 2017 amendment, was filed with the SEC on January 17, 2017), and declared effective on January 17, 2017; (b) the joint proxy statement/prospectus that Windstream filed with the SEC under Rule 424(B)(3) on January 24, 2017, and that was mailed to EarthLink and Windstream stockholders on or about January 25, 2017; (c) the joint proxy/prospectus that EarthLink filed with the SEC on Schedule 14A as a proxy statement on January 24, 2017; (d) the 8-K that EarthLink filed with the SEC pursuant to Rule 425 under the Securities Act on February 14, 2017; and (e) all documents incorporated by reference in, or supplements to, any of the foregoing documents.

4881-8624-3516.v5

1.30    "Person(s)" means any individual, corporation (including all divisions and subsidiaries), general or limited partnership, limited liability partnership, domestic partnership, marital community, association, joint stock company, joint venture, joint venturer, limited liability company, professional corporation, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any other business or legal entity, including a Person's heirs, beneficiaries, executors, administrators, predecessors, successors, representatives, or assignees when acting in their capacity as such.

1.31    "Plaintiff's Counsel" means Lead Counsel and the law firms Johnson Fistel, LLP and Carney Bates & Pulliam, PLLC.

1.32    "Plan of Allocation" means the plan for allocating the Net Settlement Fund to Authorized Claimants as set forth in the Notice, or such other plan of allocation as the Court may approve.

1.33    "Preliminary Approval Order" means the order entered by the Court, substantially in the form attached hereto as Exhibit A, requesting, *inter alia*, preliminary approval of the Settlement, preliminary certification of the Settlement Class for settlement purposes, notice to the Settlement Class, and approval for the mailing of the Notice and publication of the Summary Notice, substantially in the forms of Exhibits A-1 and A-3, attached hereto, and the scheduling of the Settlement Hearing.

1.34    "Proof of Claim" means the form substantially in the form attached hereto as Exhibit A-2, that a Claimant must submit to request to share in a distribution of the Net Settlement Fund.

1.35    "Related Persons" means, for any applicable Person, each of that Person's past, present, or future parents, subsidiaries, and affiliates, and their respective directors, officers, employees, partners, members, principals, agents, underwriters, insurers, co-insurers, reinsurers, controlling shareholders, controlling persons, attorneys, accountants or auditors, underwriters,

financial or investment advisors or consultants, commercial bankers or investment bankers, personal or legal representatives, predecessors, spouses, heirs, estates. executors, trustees, administrators, related or affiliated entities, any entity in which the Person has a controlling interest, any member of the Person's immediate family, or any trust of which any individual Person is the settlor or which is for the benefit of any Person and/or member(s) of his or her family as well as the successors and assigns of each of the foregoing.

1.36    "Released Claims" means the Released Plaintiffs' Claims and the Released Defendants' Claims.

1.37    "Released Defendant Parties" means each and all of Defendants, Defendants' Counsel, and each of their Related Persons.

1.38    "Released Defendants' Claims" means all claims and causes of action of every nature and description, including both known claims and Unknown Claims (as defined below), whether arising under federal, state, common, or foreign law, or any other law, that Defendants could have asserted against any of the Released Plaintiff Parties, including Plaintiff's Counsel, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims in the Action, except for claims relating to the enforcement of the Settlement.  "Released Defendants' Claims" do not include (a) claims between or among Defendants or any combination of Defendants, including claims for indemnification, or (b) between Defendants and their insurers.

1.39    "Released Parties" means the Released Defendant Parties and the Released Plaintiff Parties.

1.40    "Released Plaintiff Parties" means Lead Plaintiff, each and every Settlement Class Member, Plaintiff's Counsel, and each of their Related Persons.  Released Plaintiff Parties does not include any Person who timely and validly seeks exclusion from the Settlement Class.

1.41    "Released Plaintiffs' Claims" means any and all potential or actual claims, demands, losses, rights, liabilities, and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims (as defined below), whether arising under federal, state, common, or foreign law, or any other law, that have been asserted or could have been asserted in the Action or in any forum, whether foreign or domestic, that arise out of, are based on, or relate to in any way: (a) the allegations, facts, matters, events, transactions, acts, occurrences, statements, disclosures, representations, misrepresentations, and/or omissions which were or could have been alleged in the Second Amended Complaint or this Action (including claims relating to alleged false or misleading statements or omissions in the Offering Documents); (b) the exchange of EarthLink common stock for Windstream common stock in connection with the Merger; and (c) the purchase or acquisition of Windstream common stock pursuant or traceable to the Offering Documents. The Released Plaintiffs' Claims shall not release any claims to enforce the Settlement.

1.42    "Request for Exclusion" means a written request to be excluded from the Settlement Class within the time and in the manner specified in the Court's Preliminary Approval Order and the Notice.

1.43    "Second Amended Complaint" means the Second Amended Class Action Complaint for Violations of Federal Securities Laws, filed in the Action on May 27, 2021.

1.44    "Settlement" means the resolution of the Action in accordance with the terms and provisions of this Stipulation.

1.45    "Settlement Amount" means $85,000,000.00 (Eighty-Five Million U.S. Dollars) to be paid by check or wire transfer to the Escrow Agent pursuant to Section 2.1 of this Stipulation.

1.46    "Settlement Class" means: (i) all Persons or entities who acquired Windstream common stock in exchange for their shares of EarthLink in connection with the close of the Merger between EarthLink and Windstream on or about February 27, 2017, and were damaged thereby; (ii)

- 10 -

all Persons or entities who held EarthLink common stock as of January 23, 2017, the record date for EarthLink stockholders in the Merger, and acquired Windstream common stock in exchange for their shares of EarthLink in connection with the close of the Merger on or about February 27, 2017, and were damaged thereby; and (iii) all Persons or entities who purchased or otherwise acquired Windstream common stock pursuant and/or traceable to the Offering Documents, and were damaged thereby. Excluded from the Settlement Class are Defendants and their immediate families, any entity in which a Defendant has a controlling interest, and the legal representatives, heirs, successors, or assigns of any such excluded party. Also excluded from the Settlement Class are all Persons and entities who timely and validly request exclusion from the Settlement Class in accordance with the requirements set by the Court in connection with the Notice of Pendency and Proposed Settlement of Class Action and the legal representatives, affiliates, heirs, successors, or assigns of any such excluded Person.

1.47    "Settlement Class Member" means a Person who falls within the definition of the Settlement Class.

1.48    "Settlement Fund" means the Settlement Amount and any interest and income earned thereon.

1.49    "Settlement Hearing" means the hearing set by the Court to determine whether (i) the Settlement is fair, reasonable, and adequate and should be approved; (ii) the Settlement Class should be certified for settlement purposes; (iii) the Plan of Allocation is fair, reasonable, and adequate and should be approved; and (iv) the Fee and Expense Application should be approved.

1.50    "Settling Parties" means Defendants and Lead Plaintiff, on behalf of himself and the Settlement Class.

1.51    "Stipulation" means this Stipulation of Settlement.

- 11 -

1.52    "Summary Notice" means the summary notice of proposed Settlement and hearing for publication, which shall be substantially in the form attached hereto as Exhibit A-3.

1.53    "Supplemental Agreement" means the Supplemental Agreement Regarding Requests for Exclusion as described in ¶7.4.

1.54    "Tax" or "Taxes" means any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (including any estimated taxes, interest, penalties, additions to tax, and additional amounts imposed with respect thereto) imposed by any governmental authority, including, but not limited to, any local, state, or federal taxes.

1.55    "Tax Expenses" means expenses and costs incurred in connection with the calculation and payment of Taxes or the preparation of tax returns and related documents, including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs relating to filing (or failing to file) the returns described in ¶2.9.

1.56    "Unknown Claims" means (a) any and all Released Plaintiffs' Claims that any Released Plaintiff Party does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Defendant Parties, and (b) any and all Released Defendants' Claims that any Released Defendant Party does not know or suspect to exist in his, her or its favor, regardless of whether such claim(s), if known by any Released Party, might have affected his, her or its decision to enter into this Settlement, execute this Stipulation, and agree to all the various releases set forth herein, or might have affected his, her or its decision not to object to this Settlement or not exclude himself, herself or itself from the Settlement Class. Unknown Claims include, without limitation, those claims in which some or all of the facts composing the claim may be unsuspected, undisclosed, concealed, or hidden. With respect to any and all Released Claims, the Released Parties stipulate and agree that, upon the Effective Date, Released Plaintiff Parties (as regards the Released Plaintiffs' Claims) and Released Defendant Parties (as regards the Released Defendants' Claims) shall

- 12 -

expressly waive and relinquish, and each Settlement Class Member shall be deemed to have and by operation of law and of the Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, any and all provisions, rights, and benefits conferred by Cal. Civ. Code §1542, or any law of any state or territory of the United States, or principle of common law or of international or foreign law, which is similar, comparable, or equivalent to Cal. Civ. Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Released Parties acknowledge, and shall be deemed by operation of law to have acknowledged, that they may hereafter discover facts, legal theories, or authorities in addition to or different from those which he, she, it, or their counsel now knows or believes to be true with respect to the subject matter of the Released Plaintiffs' Claims or Released Defendants' Claims, but (a) the Released Plaintiff Parties shall expressly fully, finally, and forever compromise, settle, and release, and, upon the Effective Date, and by operation of the Judgment, shall have compromised, settled, and released, fully, finally, and forever, any and all Released Plaintiffs' Claims against the Released Defendant Parties, known or unknown, suspected or unsuspected, contingent or non-contingent, accrued or unaccrued, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities, and (b) the Released Defendant Parties shall expressly fully, finally, and forever compromise, settle, and release, and, upon the Effective Date, and by operation of the Judgment, shall have compromised, settled, and released, fully, finally, and forever, any and all Released Defendants'

- 13 -

Claims against the Released Plaintiff Parties, known or unknown, suspected or unsuspected, contingent or non-contingent, accrued or unaccrued, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. The Released Parties acknowledge, and shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is an essential element of the Settlement of which this release is a part.

1.57    "Windstream" means Windstream Holdings, Inc.

**2.     The Settlement**

**a.      The Settlement Amount**

2.1    In full and final settlement of the Action and the Released Claims, and in consideration of the Releases provided for in this Stipulation, Windstream, on behalf of all Defendants, shall pay or shall cause the Settlement Amount to be paid into the Escrow Account within thirty (30) calendar days after the later of: (a) entry of the Preliminary Approval Order; or (b) the Escrow Agent or Lead Counsel providing to Defendants' Counsel all information necessary to effectuate a transfer of funds to the Escrow Account, including, without limitation, (i) a completed and executed form W-9 for the Settlement Fund that reflects a valid tax identification number; (ii) wire transfer instructions (including bank name and ABA routing number, address, account name, account number, email contact information and a physical address for the Escrow Agent); (iii) the name and telephone number of an individual with knowledge who can verbally confirm the wire transfer instructions; and (iv) additional completed forms as may be required by each payor entity (*e.g.*, EFT forms, ACH forms, contact information at bank for verification purposes).

2.2     Lead Counsel shall have the right, but not the obligation, to terminate the Settlement fifteen (15) calendar days after Windstream's failure to timely pay the Settlement Amount into the Escrow Account under ¶2.1, but only if: (i) Lead Counsel has provided Defendants' Counsel with written notice of Lead Counsel's intention to terminate the Settlement; and (ii) the entire Settlement Amount is not transferred to the Escrow Account within fourteen (14) calendar days after Lead Counsel has provided such written notice.

2.3     Other than the obligation to cause the payment of the Settlement Amount in accordance with the terms of ¶2.1 herein, Defendants shall have no obligation to make any other payments pursuant to this Stipulation.

### b.     The Escrow Agent

2.4     The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶2.1 in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, or in money funds holding only instruments backed by the full faith and credit of the United States Government, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  All costs and risks related to the investment of the Settlement Amount and the Settlement Fund in accordance with the guidelines set forth in this paragraph shall be borne by the Settlement Fund.

2.5     The Escrow Agent shall not disburse the Settlement Fund except: (a) as provided in this Stipulation; (b) by an order of the Court; or (c) with the prior written agreement of counsel for the Settling Parties.

2.6     Subject to further order(s) and/or directions as may be made by the Court, or as provided in this Stipulation, the Escrow Agent is authorized to execute such transactions as are provided for under the terms of this Stipulation.  The Released Defendant Parties shall have no

- 15 -

responsibility for, interest in, or liability whatsoever with respect to the actions of the Escrow Agent, or any transaction executed by the Escrow Agent.

2.7    The Settlement Fund held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as the Net Settlement Fund shall be distributed to Authorized Claimants or returned pursuant to this Stipulation and/or further order(s) of the Court.

2.8    Prior to the Effective Date and without further order of the Court, up to $250,000.00 (Two Hundred Fifty Thousand U.S. Dollars) of the Settlement Fund may be used by the Escrow Agent to pay Notice and Administration Expenses.  After the Effective Date, Lead Counsel may pay all further reasonable Notice and Administration Expenses, regardless of amount, without further order of the Court.  In the event that the Settlement is not consummated, money paid or costs actually incurred or due and owing for these notice and administration purposes shall not be returned to the entities that funded the Settlement Fund.  In any event, no Defendant or any of their Related Persons shall bear any cost or have any responsibility for the Notice or any additional notices to the Settlement Class.

c.    **Taxes**

2.9    With respect to Taxes, the Settling Parties agree as follows:

(a)    The Settlement Fund shall be treated as being, at all times, a "qualified settlement fund" within the meaning of Treasury Regulation §1.468B-1 and the regulations promulgated thereunder.  The Settlement Fund shall be established pursuant to the Court's subject matter jurisdiction within the meaning of Treas. Reg. §1.468B-1(c)(1).  In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.9, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and

- 16 -

requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)     For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" (as defined in Treas. Reg. §1.468B-2(k)(3)) shall be the Escrow Agent.  The Escrow Agent shall timely and properly file all informational and other federal, state, or local tax returns necessary or advisable with respect of the Settlement Fund (including, without limitation, the returns described in Treasury Regulation §1.468B-2(k)).  Such returns (as well as the election described in ¶2.9(a)) shall be consistent with this ¶2.9 and in all events shall reflect that all Taxes (including any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.9(c) hereof.

(c)     All (i) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Defendant Parties or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal or state income tax purposes, and (ii) Tax Expenses, including expenses and costs incurred in connection with the operation and implementation of this ¶2.9, shall be paid out of the Settlement Fund by the Escrow Agent; in all events the Released Defendant Parties and their counsel shall have no liability or responsibility for the Taxes or the Tax Expenses.  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized

Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation §1.468B-2(l)(2)); neither the Released Defendant Parties nor their counsel are responsible nor shall they have any liability for any Taxes or Tax Expenses. The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2.9.

(d)    No opinion or advice concerning the Tax consequences of the proposed Settlement to individual Settlement Class Members is being given or will be given by the Settling Parties or their counsel; nor is any representation or warranty in this regard made by virtue of this Stipulation. Each Settlement Class Member's Tax obligations, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that the Tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

### d.    Termination of Settlement

2.10    In the event the Settlement is not approved, or is terminated, canceled, or the Effective Date fails to occur for any reason, including, without limitation, in the event the Judgment is reversed, vacated, or altered following any appeal taken therefrom, or is successfully collaterally attacked, that portion of the Settlement Fund that has been paid or transferred (including accrued interest), less expenses actually incurred or due and owing for Notice and Administration Expenses, Taxes or Tax Expenses pursuant to ¶¶2.8 or 2.9, shall be refunded to the entities that paid the Settlement Amount in accordance with ¶¶6.3 and 7.6.

### 3.    Preliminary Approval Order and Settlement Hearing

3.1    Promptly after execution of this Stipulation, Lead Counsel shall submit this Stipulation together with its exhibits (the "Exhibits") to the Court and shall apply for entry of the Preliminary Approval Order, substantially in the form of Exhibit A attached hereto, requesting, *inter*

*alia*, preliminary approval of the Settlement, preliminary certification of the Settlement Class for settlement purposes, notice to the Settlement Class, and approval for the mailing of the Notice and publication of the Summary Notice, substantially in the forms of Exhibits A-1 and A-3, attached hereto, and the scheduling of the Settlement Hearing.  The Notice shall include the general terms of the Settlement set forth in this Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application, and the expected date of the Settlement Hearing.

3.2     Lead Counsel shall request that, after notice is given to the Settlement Class, the Court hold the Settlement Hearing and approve the Settlement of the Action as set forth herein, the proposed Plan of Allocation, and the Fee and Expense Application.

3.3     If the Settlement is approved by the Court, the Settling Parties shall request that the Court enter a Judgment, substantially in the form attached hereto as Exhibit B.

3.4     Without conceding that such notice is required by law, no later than ten (10) calendar days after the Court enters the Preliminary Approval Order, Defendants shall serve notice of the proposed Settlement to the appropriate federal and state officials under the Class Action Fairness Act, 28 U.S.C. §1715 ("CAFA"), and shall pay any and all costs associated with providing such notice.

3.5     Any Settlement Class Member who wishes to request exclusion from (*i.e.*, opt out of) the Settlement Class must submit a written Request for Exclusion within the time and in the manner specified in the Court's Preliminary Approval Order and the Notice.

**4.     Releases**

4.1     Upon the Effective Date, each of the Released Plaintiff Parties, including Lead Plaintiff and each member of the Settlement Class (a) shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever compromised, settled, released, relinquished, waived, and discharged against each and every one of the Released Defendant Parties

- 19 -

(whether or not such Released Plaintiff Party executes and delivers the Proof of Claim or shares in the Net Settlement Fund) any and all Released Plaintiffs' Claims (including, without limitation, Unknown Claims), and (b) shall forever be barred and enjoined from asserting, commencing, instituting, prosecuting, assisting, or maintaining any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative or other forum, foreign or domestic, asserting the Released Plaintiffs' Claims (including without limitation, Unknown Claims) against any and all of the Released Defendant Parties, whether or not such Released Plaintiff Party executes and delivers the Proof of Claim or shares in the Net Settlement Fund.  Nothing in this provision shall preclude Plaintiff's Counsel from bringing a claim against any Released Defendant Party on behalf of a client who is not a Released Plaintiff Party, except that Plaintiff's Counsel shall be precluded from bringing or making any claim on behalf of themselves in their own individual capacity, whether by representing themselves or being represented by separate counsel.  The Court shall retain exclusive jurisdiction to interpret and enforce the permanent injunction described in this paragraph.

4.2     Each Proof of Claim that is executed by a Settlement Class Member shall release all Released Plaintiffs' Claims against the Released Defendant Parties.

4.3     Upon the Effective Date, each of the Released Defendant Parties (a) shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever compromised, settled, released, relinquished, and discharged each and every one of the Released Plaintiff Parties, including Plaintiff's Counsel, from all Released Defendants' Claims (including, without limitation, Unknown Claims), and (b) shall forever be barred and enjoined from asserting, commencing, instituting, prosecuting, assisting, or maintaining any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative or other forum, foreign or domestic, asserting the Released Defendants' Claims (including without limitation, Unknown Claims) against any and all of the Released Plaintiff Parties, including Plaintiff's Counsel.  The Court shall retain exclusive

- 20 -

jurisdiction to interpret and enforce the permanent injunction described in this paragraph. Notwithstanding the foregoing, nothing in this Stipulation or its Exhibits shall be construed as limiting, modifying, or otherwise affecting any insurance coverage or policies that may be available to any of the Released Defendant Parties.

      4.4    The Judgment shall contain a bar order ("Bar Order") that shall, pursuant to the PSLRA and common law, bar all future claims and claims by any individual or entity against any of the Released Defendant Parties, and by the Released Defendant Parties against any individual or entity, for (a) contribution or indemnity (or any other claim or claim, however denominated on whatsoever theory) arising out of or related to the claims or allegations asserted by Lead Plaintiff in the Action, or (b) any other claim of any type, whether arising under state, federal, common, or foreign law, for which the injury claimed is that Person's actual or threatened liability to Lead Plaintiff and/or Settlement Class Members arising out of or related to the claims or allegations asserted by Lead Plaintiff in the Action. The Bar Order shall also provide that any final verdict or judgment that may be obtained by or on behalf of the Settlement Class or a Settlement Class Member against any individual or entity subject to the Bar Order shall be reduced by the greater of: (a) an amount that corresponds to the percentage of responsibility of Defendants for common damages; or (b) the amount paid by or on behalf of Defendants to the Settlement Class or Settlement Class Members for common damages. Nothing in the Bar Order or this Stipulation shall release any claims that Defendants may have against their own respective liability insurance carriers. Nothing in the Bar Order or this Stipulation shall be construed to impair, negate, diminish, or adversely affect any rights of Defendants or their successors or assigns under or with respect to any insurance policies, including, but without limitation, any rights to seek to recover or to recover insurance proceeds or payments under any insurance policies with respect to amounts paid pursuant to this Stipulation or incurred in connection with the Action, or any other actual or alleged loss or liability,

and Defendants expressly reserve all rights, claims, positions, arguments, contentions, and defenses with respect to such matters.

      **5.**      **Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund**

      5.1      The Claims Administrator, subject to such supervision and direction of the Court as may be necessary or as circumstances may require, shall provide notice of the Settlement to the Settlement Class, shall administer and calculate the claims submitted by Settlement Class Members, and shall oversee distribution of the Net Settlement Fund to Authorized Claimants. The Released Defendant Parties shall have no responsibility whatsoever for, interest in, or any liability whatsoever with respect to the administration of the Settlement or the actions or decisions of the Claims Administrator.

      5.2      In accordance with the schedule set forth in the Preliminary Approval Order, the Claims Administrator will mail the Notice, substantially in the form of Exhibit A-1 attached hereto, and a Proof of Claim, substantially in the form of Exhibit A-2 attached hereto, to all shareholders of record, or nominees. The Notice and Proof of Claim shall also be posted on the Settlement website. In accordance with the schedule set forth in the Preliminary Approval Order, the Summary Notice, substantially in the form of Exhibit A-3 attached hereto, will also be published once in the national edition of *The Wall Street Journal* and once over a national newswire service. To the extent there are updates or modifications to the Notice, Proof of Claim, and Summary Notice to the Settlement Class, such updates will be reflected on a settlement website to be maintained by the Claims Administrator for the purpose of providing Settlement Class Members with information relating to the Settlement. The Released Defendant Parties shall have no responsibility for, or liability whatsoever with respect to, the Notice and Administration Expenses, nor shall they have any responsibility or liability whatsoever for any claims with respect thereto. The cost of providing such notice shall be paid out of the Settlement Fund.

5.3     The Settlement Fund shall be applied as follows:

(a)     to pay all Notice and Administration Expenses;

(b)     to pay all Taxes and Tax Expenses;

(c)     to pay any Fee and Expense Award and any Lead Plaintiff Award, if and to the extent allowed by the Court; and

(d)     after the Effective Date, to distribute the Net Settlement Fund to Authorized Claimants as provided by this Stipulation, the Plan of Allocation, or orders of the Court.

5.4     Upon the Effective Date and thereafter, and in accordance with the terms of this Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with ¶¶5.5-5.12 below.

5.5     Each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim, substantially in the form of Exhibit A-2 attached hereto, postmarked (for U.S. mail) or received by the private carrier (*e.g.*, Federal Express, UPS, etc.), or received electronically by the Claims Administrator by no later than ninety (90) calendar days after mailing of the Notice or such other time as may be set by the Court (the "Bar Date"). Each Proof of Claim shall be signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim and as are reasonably available to such Person.

5.6     All Settlement Class Members who fail to timely submit a Proof of Claim, or who submit a Proof of Claim that is rejected, shall be forever barred from receiving any payments pursuant to this Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgment, and will be barred from bringing any action against the Released Defendant Parties concerning any Released Plaintiffs' Claim. Notwithstanding the foregoing, Lead Counsel shall have

- 23 -

the discretion (but not the obligation) to accept late-submitted but otherwise valid Claims for processing so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby.

5.7    Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, who shall determine, in accordance with this Stipulation, the Preliminary Approval Order, and the approved Plan of Allocation, the extent, if any, to which each Claim shall be allowed, subject to review by the Court.  The Claims Administrator shall calculate the claims of Authorized Claimants in accordance with the Plan of Allocation set forth in the Notice and approved by the Court. Following the Effective Date, the Claims Administrator shall send to each Authorized Claimant his, her, or its *pro rata* share of the Net Settlement Fund, as long as the Authorized Claimant will receive a distribution with a value of at least $10.00.

5.8    As of the Effective Date, Defendants shall not have a reversionary interest in the Net Settlement Fund, and shall not have liability should Claims made exceed the amount available in the Net Settlement Fund for payment of such Claims.  If there is any balance remaining in the Net Settlement Fund after a reasonable amount of time following the date of the initial distribution of the Net Settlement Fund, Lead Counsel shall, if feasible, reallocate such balance in an equitable and economical fashion among Authorized Claimants who negotiated the checks sent to them in the initial distribution and who would receive an additional distribution with a value of at least $10.00. These reallocations shall be repeated until the balance remaining in the Net Settlement Fund is *de minimis* and such remaining balance shall then be donated to the Legal Aid of Arkansas.

5.9    Other than the obligation to pay or cause to be paid the Settlement Amount into the Settlement Fund, as set forth in ¶2.1 herein and Defendants' obligation to pay costs associated with CAFA, as set forth in ¶3.4 herein, the Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the administration of the Settlement or the actions

- 24 -

or decisions of the Claims Administrator and shall have no liability whatsoever to the Released Plaintiff Parties in connection with such administration, including, but not limited to: (a) any act, omission, or determination by Lead Counsel, the Escrow Agent, the Claims Administrator, or any of their respective designees or agents in connection with the administration of the Settlement or otherwise; (b) the management, investment, or distribution of the Settlement Fund; (c) the Plan of Allocation; (d) the determination, administration, calculation, or payment of any Proof of Claim; (e) any loss suffered by, or fluctuation in value of, the Settlement Fund; (f) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund, distributions, or other payments from the Escrow Account, or the filing of any federal, state, or local returns; or (g) the payment of any other Notice and Administration Expenses.

5.10    Defendants shall take no position with respect to the Plan of Allocation or any other such plan as may be approved by the Court.

5.11    It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel the Settlement or affect the finality of the Court's Judgment approving the Settlement, or any other orders entered pursuant to this Stipulation.  The Settling Parties shall be bound by the terms of this Stipulation, irrespective of whether the Court disapproves or modifies the Plan of Allocation.

5.12    No Person shall have any claim against Lead Plaintiff, the Settlement Class, Plaintiff's Counsel, Released Defendant Parties, Defendants' Counsel, or the Claims Administrator

based on distributions made substantially in accordance with the Settlement, this Stipulation, and the Plan of Allocation, or otherwise as further ordered by the Court.

### 6. Plaintiff's Counsel's Attorneys' Fees and Expenses

6.1     Plaintiff's Counsel may submit a Fee and Expense Application.  Any Fee and Expense Award or Lead Plaintiff Award shall be payable solely from the Settlement Fund.

6.2     Subject to Court approval, any Fee and Expense Award shall be paid to Lead Counsel from the Settlement Fund, as ordered, immediately upon entry by the Court of the Fee and Expense Award.  This provision shall apply notwithstanding timely objection to, potential for appeal from, or collateral attack on, the Settlement, any part thereof, or any Fee and Expense Award.  Lead Counsel shall thereafter allocate the Fee and Expense Award among Plaintiff's Counsel in a manner that Lead Counsel in good faith believes reflects the contributions of such counsel to the prosecution and resolution of the Action.  Any Lead Plaintiff Award shall be payable only after the Judgment becomes Final.

6.3     In the event that the Judgment or any Fee and Expense Award or Lead Plaintiff Award is reversed or modified, or if the Settlement is cancelled or terminated for any reason, then (a) Lead Counsel and such other Plaintiff's Counsel who have received any portion of the Fee and Expense Award, and (b) Lead Plaintiff shall, in an amount consistent with such reversal or modification, refund such fees, expenses, or award to the Settlement Fund pursuant to ¶2.10, plus the interest earned thereon at the same rate earned by the Settlement Fund, within twenty-one (21) calendar days from receiving notice from Defendants' Counsel or from a court of competent jurisdiction.  Any refunds of the Fee and Expense Award required pursuant to this paragraph shall be the several obligation of each Plaintiff's Counsel to make appropriate refunds or repayments to the Settlement Fund.  Each Plaintiff's Counsel, as a condition of receiving such fees or expenses on behalf of itself and each partner and/or shareholder of it, agrees that its law firm and its partners,

- 26 -

members, and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph.

6.4    The procedure for and the allowance or disallowance by the Court of the Fee and Expense Application, to be paid out of the Settlement Fund, are not part of the Settlement set forth in this Stipulation, and the Fee and Expense Application shall be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement.  The approval of the Settlement, and its becoming Final, shall not be contingent on nor otherwise affected by the grant or denial, in whole or in part, of any Fee and Expense Application, nor by any appeals or modifications of any resulting Fee and Expense Award or Lead Plaintiff Award.  Any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Settlement, or affect or delay the validity, enforceability, or finality of the Judgment approving the Settlement.

6.5    Defendants and their Related Persons shall have no responsibility for, and no liability whatsoever with respect to, any payment to Plaintiff's Counsel or Lead Plaintiff from the Settlement Fund or the allocation among Plaintiff's Counsel and/or any other person who may assert some claim to any Fee and Expense Award or Lead Plaintiff Award.

**7.    Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

7.1    The Effective Date of the Settlement shall be deemed to occur on the occurrence of all of the following events:

(a)    the Court has entered the Preliminary Approval Order, substantially in the form of Exhibit A attached hereto, as required by ¶3.1;

(b)    the Settlement Amount has been deposited into the Escrow Account pursuant to this Stipulation;

(c)     No Settling Party has exercised his, her, or its option to terminate the Settlement pursuant to this Stipulation;

(d)     the Court has approved the Settlement as described herein, following notice to the Settlement Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure, and entered the Judgment; and

(e)     the Judgment has become Final, as defined in ¶1.17.

7.2     The occurrence of the Effective Date is not conditioned on the Court having approved a Plan of Allocation for the Settlement proceeds or a claims process having begun.  It is expressly understood and agreed that the determination of when the Plan of Allocation for the proceeds of the Settlement should be presented to the Court for approval is to be made solely by Lead Plaintiff. Upon the occurrence of all of the events referenced in ¶7.1 above, any and all remaining interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished and the releases herein shall be effective.  No order of the Court or modification or reversal on appeal of any such order of the Court concerning the Plan of Allocation, any Fee and Expense Award, any Lead Plaintiff Award, and any interest awarded by the Court to Plaintiff's Counsel or Lead Plaintiff shall constitute grounds for cancellation or termination of the Settlement.

7.3     If all of the conditions specified in ¶7.1 are not met, then the Settlement shall be canceled and terminated subject to ¶7.5 unless Lead Counsel and Defendants' Counsel on behalf of their respective clients mutually agree in writing to proceed with the Settlement.

7.4     Windstream shall also have the unilateral right to terminate the Settlement in the event that Persons timely and validly requesting exclusion from the Settlement Class meet the conditions set forth in the Supplemental Agreement, in accordance with the terms of that agreement. The Supplemental Agreement, which is being executed concurrently with this Stipulation, shall not be filed with the Court and its terms shall not be disclosed in any other manner (other than the

statements herein and in the Notice, to the extent necessary, or as otherwise provided in the Settlement Agreement) unless and until the Court otherwise directs or a dispute arises between Lead Plaintiff and Windstream concerning its interpretation or application, in which event the Settling Parties shall submit the Supplemental Agreement to the Court *in camera* and request that the Court afford it confidential treatment.

7.5    Lead Plaintiff and Defendants shall each have the right to terminate the Settlement by providing written notice of their election to do so to all other parties hereto within thirty (30) calendar days of: (a) the Court's final refusal to enter the Preliminary Approval Order in any material respect; (b) the Court's final refusal to approve the Settlement or any material part thereof; (c) the Court's final refusal to enter the Judgment in any material respect as to the Settlement; or (d) the date upon which the Judgment is modified or reversed in any material respect by the Court of Appeals or the United States Supreme Court. Notwithstanding the foregoing, any order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation, the Fee and Expense Award, or any Lead Plaintiff Award, shall not be considered material to the Settlement, shall not affect the finality of any Judgment, and shall not constitute grounds for cancellation or termination of this Stipulation.

7.6    Unless otherwise ordered by the Court, in the event the Settlement is not approved, or this Stipulation or the Settlement is terminated or canceled, or the Effective Date otherwise fails to occur for any reason, then:

(a)    The Settlement and the relevant portions of this Stipulation as set forth below shall be cancelled and terminated;

(b)    The Settling Parties shall revert to their respective positions in the Action as of May 6, 2024;

(c)    The terms and provisions of this Stipulation, with the exception of ¶¶1.1-1.56, 2.5, 2.6, 2.8-2.10, 6.3, 7.2-7.7, 8.1-8.4, 9.2, 9.4-9.9, 9.11, 9.13-9.15, 9.17, and 9.19-9.23, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Action or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*; and

(d)    Within twenty-one (21) calendar days after Defendants' Counsel or Lead Counsel sends written notification to the Escrow Agent that the Settlement was not approved, or this Stipulation or the Settlement was terminated or canceled, or the Effective Date otherwise failed to occur, the Settlement Fund (including accrued interest), less expenses which have either been incurred or disbursed pursuant to ¶¶2.8 or 2.9, shall be refunded to the Persons that contributed any portion of the Settlement Amount to the Settlement Fund, in the proportional amount of their contribution, pursuant to written instructions provided by Defendants' Counsel to the Escrow Agent. At the request of Defendants' Counsel and pursuant to written direction provided by Defendants' Counsel to the Escrow Agent, the Escrow Agent or its designee shall apply for any Tax refund owed on the Settlement Fund and pay the proceeds, after deduction of any expenses incurred in connection with such application(s) for refund, to the same Persons in the same manner as the Settlement Fund described in this paragraph.

7.7    Each Defendant warrants and represents as to himself, herself, or itself only, that he, she, or it is not "insolvent" within the meaning of 11 U.S.C. §101(32) as of the time this Stipulation is executed and as of the time the payments of the Settlement Amount are actually transferred or made as reflected in this Stipulation.  This representation is made by Defendants and not by Defendants' Counsel.  In the event of a final order of a court of competent jurisdiction, not subject to any further proceedings, determining the transfer of the Settlement Amount, or any portion thereof, by or on behalf of any Defendant to be a preference, voidable transfer, fraudulent transfer or similar

transaction under Title 11 of the United States Code (Bankruptcy) or applicable state law and any portion thereof is required to be refunded and such amount is not promptly deposited in the Escrow Account by or on behalf of any other Defendant, then, at the election of Lead Counsel, as to the Defendant as to whom such order applies, the Settlement may be terminated and the releases given and the judgment entered in favor of such Defendant pursuant to the Settlement shall be null and void.  In such instance, the releases given and the Judgments entered in favor of other Defendants shall remain in full force and effect.  Alternatively, Lead Counsel may elect to terminate the entire Settlement as to all Defendants and all of the releases given and the judgments entered in favor of the Defendants pursuant to the Settlement shall be null and void and Lead Plaintiff may proceed as if the Settlement were never entered into.

**8.    No Admission**

8.1    The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Action and the Released Claims.  The Settlement shall not be deemed an admission by any Settling Party or any of the Released Parties as to the merits of any claim or defense.

8.2    Defendants have denied and continue to deny each and all of the claims and contentions alleged by Lead Plaintiff in this Action.  Neither this Stipulation (whether or not consummated), including the Exhibits attached hereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of this Stipulation, nor any proceedings taken pursuant to or in connection with this Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a)    shall be (i) offered or used against any of the Released Defendant Parties as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission

by any of the Released Defendant Parties with respect to the truth of any fact alleged by Lead Plaintiff or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Released Defendant Parties, or (ii) in any way referred to for any other reason as against any of the Released Defendant Parties, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(b)    shall be (i) offered or used against any of the Released Plaintiff Parties, as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Released Plaintiff Parties that any of their claims are without merit, that any of the Released Defendant Parties had meritorious defenses, or that damages recoverable from Defendants under the Second Amended Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault, or wrongdoing of any kind, or (ii) in any way referred to for any other reason as against any of the Released Plaintiff Parties, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; or

(c)    shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial against Defendants.

(d)    Provided, however, that if this Stipulation is approved by the Court, the Released Parties and their respective counsel may refer to the Settlement and/or the Judgment to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.

- 32 -

8.3     The Settling Parties agree that (a) based upon the publicly available information at the time, the Action was filed and defended in good faith and was not frivolous; (b) they are entering into the Settlement voluntarily after extensive negotiations and consultation with experienced legal counsel who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses; (c) throughout the course of the Action, all parties and their counsel acted in good faith and complied with the provisions of the Federal Rules of Civil Procedure, including, but not limited to, Rule 11 thereof; and (d) the Judgment shall contain a finding that during the course of the Action, the parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.  The Settling Parties and their counsel agree not to assert in any statement made to any media representative (whether or not for attribution) that the Action was commenced or prosecuted by Lead Plaintiff or defended by Defendants in bad faith, nor will they deny that the Action was commenced and prosecuted and defended in good faith.  In all events, the Settling Parties and their counsel shall not make any accusations of wrongful or actionable conduct by any party concerning the prosecution, defense, and resolution of the Action and shall not otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged.  The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum regarding the Action, including that the Action was brought or defended in bad faith or without a reasonable basis.  Defendants retain the right to deny that the claims asserted in the Action were meritorious.

8.4     Solely for purposes of this Settlement and for no other purpose, Defendants do not contest: (a) certification of the Action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Settlement Class; (b) certification of Lead Plaintiff as class representative for the Settlement Class; and (c) appointment of Lead Counsel as class counsel for the Settlement Class pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.  In

the event that the Settlement is terminated pursuant to the terms of this Stipulation, the certification of the Settlement Class in connection with this Settlement shall become null and void.  In such case, Defendants shall have the right to continue to oppose certification of any class in this Action.

9.    **Miscellaneous Provisions**

9.1    The Settling Parties (a) acknowledge that it is their intent to consummate this Stipulation and the Settlement set forth therein; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of this Stipulation expeditiously.

9.2    The Settling Parties agree that this Stipulation is intended to inure to the benefit of, and be enforceable by, all Released Parties and their successors and assigns, including any Person into or with which any Defendant may merge, consolidate, or reorganize.

9.3    The Released Defendant Parties may file this Stipulation and/or the Judgment in any other action that has been or may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, statute of limitations, statute of repose, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate any liability protection under any applicable insurance policy.  The Settling Parties may file this Stipulation and/or the Judgment in any action that may be brought to enforce the terms of this Stipulation and/or Judgment.  All Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

9.4    Whether or not the Settlement is approved by the Court and whether or not the Settlement is consummated, or the Effective Date occurs, Lead Plaintiff, Defendants, and their respective counsel shall use their best efforts to keep all negotiations, discussions, and drafts in connection with this Stipulation confidential; ***provided***, ***however***, that nothing herein shall prohibit

- 34 -

disclosure of the foregoing to (a) Defendants' respective liability insurance carriers or reinsurers; and (b) to any regulatory, self-regulatory, or governmental entity or agency. To the extent disclosure is made pursuant to this paragraph, nothing in this Stipulation prohibits or restricts any Settling Party or its attorney from initiating communications directly with, responding to any inquiry from, or otherwise cooperating in any criminal or other investigative proceeding by any such regulatory, self-regulatory, or governmental entity or agency without notice to any other Settling Party.

9.5     All agreements made and orders entered during the course of the Action relating to the confidentiality of documents and information shall survive this Stipulation.

9.6     All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference. Notwithstanding the foregoing, in the event of a conflict or inconsistency between the terms of this Stipulation and the terms of any Exhibit attached hereto, the terms of this Stipulation shall control.

9.7     This Stipulation, the Exhibits thereto, and the Supplemental Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors.

9.8     No waiver of any term or provision of this Stipulation, or of any breach or default hereof or hereunder, shall be valid or effective unless in writing and signed by or on behalf of all Settling Parties or their respective successor. No waiver of any term or provision of this Stipulation, or of any breach or default hereof or hereunder, shall be construed as a waiver of the same or any other term or provision or of any previous or subsequent breach thereof.

9.9     This Stipulation, the Exhibits attached hereto, and the Supplemental Agreement constitute the entire agreement among the Settling Parties as to the subject matter hereof, and supersede any prior or contemporaneous written or oral agreements or understandings between the Settling Parties. No representations, warranties, or inducements have been made to any Settling

Party concerning this Stipulation or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents. Each Settling Party expressly disclaims any reliance on any representations, warranties, inducements, or omissions by a counterparty concerning this Stipulation, its Exhibits, or the Supplemental Agreement, other than the representations, warranties, and covenants contained and memorialized in such documents. Lead Plaintiff acknowledges that he is entering into this Stipulation and the Settlement based on his own and Plaintiff's Counsel's investigation and after consultation with Plaintiff's Counsel.

9.10    Except as otherwise provided herein (or, as between Defendants, in any separate agreements between them), each Settling Party shall bear its own costs.

9.11    This Stipulation shall be construed and interpreted to effectuate the intent of the Settling Parties, which is to resolve completely those claims and disputes, including those alleged in the Action, as more fully described herein. If any provision of this Stipulation shall be determined to be invalid, void, or illegal, such provision shall be construed and amended in a manner that would permit its enforcement, but in no event shall such provision affect, impair, or invalidate any other provision hereof.

9.12    Neither Lead Plaintiff nor Defendants shall be bound by this Stipulation if the Court modifies material terms thereof; provided, however, that it shall not be a basis for Lead Plaintiff to terminate the Settlement if the Court modifies any proposed Plan of Allocation or criteria for allocation of the Net Settlement Fund amongst Authorized Claimants, or if the Plan of Allocation is modified on appeal. Nor shall it be a basis to terminate the Settlement if the Court disapproves of or modifies the terms of this Stipulation with respect to attorneys' fees or expenses or the distribution of the Net Settlement Fund. Notwithstanding any such modification of the terms or Plan of Allocation or this Stipulation with respect to attorneys' fees or expenses, Defendants shall be entitled

to all benefits of the Settlement and shall not, under any circumstances, be called upon to contribute additional funds in addition to the Settlement Fund.

9.13    Lead Counsel, on behalf of the Settlement Class, represents that it is expressly authorized by Lead Plaintiff to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to this Stipulation to effectuate its terms and conditions and also is expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of the Settlement Class that it deems appropriate.

9.14    Each counsel or other Person executing this Stipulation, any of its Exhibits, the Supplemental Agreement, or another related documents on behalf of any Settling Party hereby warrants and represents that such Person has the full authority to do so, and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Stipulation to effectuate its terms, without requiring additional consent, approval, or authorization of any other Person, board, entity, tribunal, or other regulatory or governmental authority.

9.15    All notices, requests, demands, claims, and other communications hereunder shall be in writing and shall be deemed duly given: (i) when emailed or delivered personally to the recipient; (ii) one (1) business day after being sent to the recipient by Federal Express or UPS (charges prepaid) with delivery acknowledged by the carrier; or (iii) seven (7) calendar days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, and addressed to the intended recipient as set forth below:

If to Lead Plaintiff or to Plaintiff's Counsel:

David A. Knotts
DKnotts@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101

If to Defendants or to Defendants' Counsel:

Noelle M. Reed
Noelle.Reed@skadden.com
Wallis M. Hampton
Wallis.Hampton@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
1000 Louisiana, Suite 6800
Houston, TX  77002

Peter A. Stokes
Peter.Stokes@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Boulevard, Suite 1100
Austin, TX  78701-4255

9.16    This Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.  Signatures sent by PDF documents via e-mail shall be deemed originals.

9.17    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation and the Settlement set forth therein.  All Settling Parties and Settlement Class Members submit to the exclusive jurisdiction of the Court for purposes of implementing and enforcing the Settlement set forth in this Stipulation and matters related to or arising under the Settlement, including, but not limited to, all releases provided for herein and in the Judgment.

9.18    Pending final Court approval of the Settlement, all proceedings in this Action except for activities related to the approval or enforcement of the Settlement or Stipulation shall be stayed, and all members of the Settlement Class shall be barred and enjoined from prosecuting any of the Released Plaintiffs' Claims against any of the Released Defendant Parties consistent with any applicable orders of the Court.

9.19    This Stipulation, the Exhibits attached hereto, and the Supplemental Agreement shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Arkansas, and the rights and obligations of Lead Plaintiff and Defendants hereunder shall be

construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Arkansas, without giving effect to that State's choice-of-law principles, except to the extent that federal law requires that federal law govern.

9.20    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

9.21    This Stipulation, the Exhibits attached hereto, and the Supplemental Agreement shall not be construed more strictly against one party than another merely by virtue of the fact that they, or any part of them, may have been prepared by counsel for one of the Settling Parties, it being recognized that these documents are the result of arm's-length, good faith negotiations between the Settling Parties and the Settling Parties have contributed substantially and materially to the preparation of these documents.

9.22    Nothing in this Stipulation, the Exhibits attached hereto, or the Supplemental Agreement, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, attorney-client privilege, joint defense privilege, or work product protection.

9.23    Unless otherwise provided, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation without further order of the Court.

IN WITNESS WHEREOF, the Settling Parties have caused this Stipulation to be executed, by their duly authorized attorneys, as of September 4, 2024.

ROBBINS GELLER RUDMAN
  & DOWD LLP
RANDALL J. BARON (admitted *pro hac vice*)
A. RICK ATWOOD, JR. (admitted *pro hac vice*)
DAVID A. KNOTTS (admitted *pro hac vice*)

_____
DAVID A. KNOTTS

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
randyb@rgrdlaw.com
ricka@rgrdlaw.com
dknotts@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
NOAM MANDEL (admitted *pro hac vice*)
DESIREE CUMMINGS (admitted *pro hac vice*)
JONATHAN ZWEIG (admitted *pro hac vice*)
420 Lexington Avenue, Suite 1832
New York, NY  10170
Telephone:  212/432-5100
noam@rgrdlaw.com
dcummings@rgrdlaw.com
jzweig@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*

RANDALL K. PULLIAM
Bar No. ABN 98105
HANK BATES
Bar No. ABN 98063
CARNEY BATES & PULLIAM, PLLC
519 W. 7th Street
Little Rock AR  72202
Telephone:  501/312-8500
501/312-8505 (fax)
rpulliam@cbplaw.com
hbates@cbplaw.com

*Local Counsel*

JOHNSON FISTEL, LLP
BRETT M. MIDDLETON
501 West Broadway, Suite 800
San Diego, CA  92101
Telephone:  619/230-0063
brettm@johnsonfistel.com

*Additional Counsel for Lead Plaintiff*

- 40 -

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
NOELLE M. REED
AR Bar No. 98046
WALLIS M. HAMPTON (*admitted pro hac vice*)

NOELLE M. REED

1000 Louisiana Street, Suite 6800
Houston, TX 77002
Telephone: 713/655-5100
713/655-5200 (fax)
noelle.reed@skadden.com
wallis.hampton@skadden.com

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
VIRGINIA MILSTEAD (*admitted pro hac vice*)
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: 213/687-5000
213/687-5600(fax)
virginia.milstead@skadden.com

WRIGHT, LINDSEY & JENNINGS LLP
GARY D. MARTS, JR.
AR Bar No. 2004116
200 West Capitol Avenue, Suite 2300
Little Rock, AR 72201
Telephone: 501/371-0808
501/376-9442 (fax)
gmarts@wlj.com

*Attorneys for Defendants Windstream Holdings, Inc.,
Carol B. Armitage, Samuel E. Beall III, Jeanie H.
Diefenderfer, Robert E. Gunderman, Jeffrey T.
Hinson, William G. LaPerch, Larry Laque, Michael
G. Stoltz, Tony Thomas, Alan L. Wells, Kristi Moody,
and EarthLink Holdings Corp.*

- 41 -

4881-8624-3516.v5

NORTON ROSE FULBRIGHT US LLP
PETER A. STOKES (*admitted pro hac vice*)


*Peter A. Stokes*

PETER A. STOKES

98 San Jacinto Boulevard, Suite 1100
Austin, TX 78701-4255
Telephone: 512/474-5201
512/536-4598 (fax)
peter.stokes@nortonrosefulbright.com

NORTON ROSE FULBRIGHT US LLP
RICHARD S. KRUMHOLZ
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
Telephone: 214/855-8000
214/855-8200 (fax)
richard.krumholz@nortonrosefulbright.com

*Attorneys for Defendants Susan D. Bowick, Joseph F.
Eazor, Kathy S. Lane, Garry K. McGuire, R. Gerard
Salemme, Julie A. Shimer, Marc F. Stoll, and Walter
L. Turek*

4881-8624-3516.v5